Leslie Moore
P.O. Box 7423
Chico, CA 95927
(530) 514-3672
Sui Juris/In pro per



**FILED**

MAR 25 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA
### (Sacramento Division)

Leslie Moore,
     Plaintiff,

vs.

Case # 2 1 0 - CV - 0 7 1 3 MCE CMK PS

County of Butte, City of Chico,
State of California, Department of Justice,
Butte County District Attorney,
Superior Court of the State of California at
Butte County, Butte County Children's Services
Division of the Department of Health and
Human Services, Chico Police Department,
Butte County Sheriff's Office, Terry Moore,
Robert Merrifield, Loretta MacPhail,
Bruce Hagerty, John Rucker, Michael O'Brien,
Michael Maloney, Michael Webber,
Daniel Fonseca, Linda Dye, John Carillo,
Jose Lara, Alicia Rock, Lori Barker,
Roger Wilson , Rick West, Kory Honea,
Michael Ramsey, Pamela Chambers,
Pamela Richards, Patty Parra, Jorje Lozano,
Erin Sweet, Eric O'Berg, David Kennedy,
Peter Meadowsong, Kimberly Merrifield,
Bruce Alpert, Amy King, Tamara Solano,
Steven McNelis, William Patrick,
Tamara Mosbarger, James Reilley, David Gunn,
William Lamb, Anne Osborn, Elisabeth Woodward,
Martin McHugh, Alfred Driscoll, Gary Wilson,
Richard Thomas, Larry Levine, Windsor, Lang,
North State Public Safety Employee Retiree
Medical Trust, and Does 1 - 10,
     Defendants.
_____/

**COMPLAINT FOR CIVIL RIGHTS**
**VIOLATIONS [42 U.S.C. 1983]**

**DEMAND FOR JURY TRIAL**

Complaint - Leslie Moore v County of Butte, et al

1

## TABLE OF CONTENTS

2

3      I.      Jurisdiction ........................................................................      1

4      II.     Introduction to Parties ........................................................      2

5      III.    Introduction to Case ............................................................      8

6      IV.     Exhaustion of Administrative Remedies...............................      10

7      V.      Timely Filing.......................................................................      11

8      VI.     Factual Allegations .............................................................      12

9      VII.    Causes of Action ................................................................      55

10     VIII.   Damages ..............................................................................      67

11     IX.     Prayer for Relief.................................................................      69

12     Attached:

13            Civil Case Cover Sheet

14            Motion to Proceed in Pauperis

15

16

17

18

19

20

21

22

23

# I

## JURISDICTION

**1.** Jurisdiction is conferred on this court because I am bringing this lawsuit pursuant to **Title 42, USC., Section 1983** to redress the deprivation by defendants, acting under color of state law, of rights secured to me under the United States Constitution, including the first, second, fourth, fifth, sixth, seventh, eighth, ninth, tenth and/or fourteenth amendments, and the underlying basic precept of the United States Constitution 'to be left alone.'

**2.** 28 USC section 1343 (3) and 1343 (4) provides for original jurisdiction in this court of all suits brought pursuant to 42 USC 1983, and 28 USC 1331 (a) provides that claims for relief derive from the United States Constitution and the laws of the United States.

**3.** Venue properly lies in the Eastern District of California, Sacramento Division, in that the events and circumstances herein alleged occurred in Butte County, and at least one defendant resides in Butte County.

**4.** I have kept excellent records. Each paragraph in the complaint herein below is supported by the evidence in my possession at this time, so most, if not all, I allege will be admitted by defendants and/or affirmed in summary judgment, and therefore settled pre-trial, so there should be very little burden on the court.

**5.** A few elements of this lawsuit are not federal issues, but they are relevant to the totality of the circumstances and as such must be included herein. Discrimination based on disability, religion and political affiliation are factors as well, as is SLAPP.

**6.** Though I have no legal background and have been disabled by that which is

1   complained of herein, I have reviewed the Local and Federal Rules of Court and have

2   made every effort to avoid imperfections, defects, or want of form (Judiciary act of

3   September 24, 1789, Section 342, FIRST CONGRESS, Sess. 1, ch. 20, 1789), and to

4   provide a pleading that states my claim in a manner that can be read and understood by

5   any reasonable and literate person (Spencer V Doe, 1998; Green V Branson 1997; Boag

6   V McDougall, 1998; Haines V Kemer, 1972; Devine V Indian River County School Bd.).

7

8                                           **II**

9                           **INTRODUCTION TO PARTIES**

10

11   7. I, the plaintiff, Leslie Moore, a resident of the County of Butte, am bringing this case

12   myself in pro per in the interest of the healing of the individual victims and the restoration

13   of the social order.  I am 51 years old.  I was a homemaker for the most part but worked

14   in the fields of teaching, child care, animal care, and health care on a part time basis and

15   was pursuing a retirement career in plant propagation and motivational seminars.

16   8. I was married for 27 years to defendant Terry Moore (hereinafter 'Moore'), a police

17   officer and union activist.

18   9. The child in the case is K.T.  He was born on 8/25/03 as my non-related grandson.  I

19   gradually became K.T.'s primary caregiver.  In December of '06 he began living with me

20   full-time and I became his de facto parent.  Then in September of 07, he was detained

21   from his mother (hereinafter 'Dawn') while on an outing with her and returned home and

22   placed in foster care with me.  In October of '07, with his mother's blessing, I began the

23   adoption proceedings.

10. Defendant City of Chico (hereinafter 'City') is a municipal corporation and chartered city, organized and existing under the laws of the State of California.

11. Defendant County of Butte (hereinafter 'County') is a county organized and existing under the laws of the State of California.

12. Defendant State of California ('State') is a sovereign state of the United States of America.

13. Defendant Department of Justice ('DOJ') is a governmental agency organized and existing pursuant to the laws and policies of State and/or the United States.

14. Defendant Chico Police Department ('CPD') is a governmental agency organized and existing pursuant to the law and policies of City.

15. Defendant Children's Services Division of the Department of Health and Human Services ('CSD') is a governmental agency organized and existing pursuant to the law and policies of County and/or State.

16. Defendant Butte County District Attorney's Office ('BCDA') is a governmental agency organized and existing pursuant to the law and policies of County.

17. Defendant Superior Court of the State of California at Butte County ('BCSC') is a governmental agency/branch of the three-pronged checks-and-balances system established in the Constitution of the United States and existing/operating pursuant to the laws and policies of County, State, and/or United States.

18. Defendant Butte County Sheriff's Office ( 'BCSO') is a governmental agency organized and existing pursuant to the law and policies of County.

19. Defendants Chico Police Officer Terry Moore ('Moore'), Chico Police Sergeant Robert Merrifield ('R. Merrifield'), Chico Police Lieutenant, now Captain Loretta

1     MacPhail ('MacPhail'), Chico Police Chief, now retired Bruce Hagerty ('Hagerty'),

2     Chico Police Captain, now Assistant City Manager John Rucker ('Rucker'), Chico Police

3     Lieutenant Michael O'Brien ('O'Brien'), Chico Police Captain, now Chief of Police

4     Michael Maloney ('Maloney'), Chico Police Lieutenant, now retired Michael Webber

5     ('Webber'), Chico Police Sergeant Daniel Fonseca, ('Fonseca'), Chico Police Lieutenant

6     Linda Dye ('Dye'), CPD Lieutenant John Carillo ('Carillo'), and CPD Officer Jose Lara

7     ('Lara'), whose acts alleged herein were performed under color of law, were at all times

8     material hereto, upon my information and belief, employed by co-defendant City.

9     **20.** Defendants Alicia Rock ('Rock'), Lori Barker, ('Barker'), and Roger Wilson ('R.

10     Wilson') are Officers of the Court/Attorneys, whose acts alleged herein, were at all times

11     material hereto, upon my information and belief, employed by co-defendant City.

12     **21.** Defendants Pamela Richards of CSD ('Richards'), Patricia Parra of CSD ('Parra'),

13     Jorje Lozano of CSD ('Lozano'), Erin Sweet of CSD ('Sweet'), and Eric O'Berg of CSD

14     ('O'Berg'), whose acts alleged herein were performed under color of law, were at all

15     times material hereto, upon my information and belief, employed by co-defendant County

16     and/or State.

17     **22.** Defendants BCDA Michael Ramsey ('Ramsey'), BCDA Investigator Lieutenant Rick

18     West ('West'), and BCDA Chief Investigator Kory Honea ('Honea'), whose acts alleged

19     herein were performed under color of law, were at all times material hereto, upon my

20     information and belief, employees/officials of co-defendant County.

21     **23.** Defendants BCSC Judge Steven McNelis ('McNelis'), BCSC Judge William Patrick

22     ('Patrick'), BCSC Judge Tamara Mosbarger ('Mosbarger'), BCSC Presiding Judge James

23     Reilley ('Reilley'), BCSC Commissioner David Gunn ('Gunn'), and William Lamb,

1    visiting Judge to BCSC ('Lamb'), whose acts alleged herein were performed under color

2    of law, were at all times material hereto, upon my information and belief,

3    employees/officials of defendant County and/or State.

4    24. Defendants Amy King ('King'), and Tamara Solano ('Solano') are BCSC court-

5    appointed attorneys/officers of the court, whose acts alleged herein, were at all times

6    material hereto, upon my information and belief, employed by co-defendant County and/or

7    State.

8    25. Other defendants whose acts alleged herein, were at all times material hereto, upon

9    my information and belief, employed by co-defendant County and/or State, are: Peter

10   Meadowsong, Butte County Administration ('Meadowsong'), and officers of the

11   court/attorneys David Kennedy, attorney for CSD ('Kennedy'), Kimberly Merrifield,

12   attorney for Butte County Council ('K. Merrifield'), and Bruce Alpert, attorney for Butte

13   County Council ('Alpert').

14   26. Defendants Windsor (unknown first name - hereinafter 'Windsor') and Lang

15   (unknown first name - hereinafter 'Lang') and Doe Sheriff's deputies working as bailiffs at

16   BCSC, whose acts alleged herein were performed under color of law, were at all times

17   material hereto, upon my information and belief, employees of co-defendant County.

18   27. Defendant Larry Levine ('Levine') of State Adoptions, whose acts alleged herein, was

19   at all times material hereto, upon my information and belief, employed by co-defendant

20   State.

21   28. Defendant officers of the court/attorneys employed by co-defendants City, County,

22   and/or State are licensed and regulated by State, as are defendant officers of the

23   court/attorneys in private practice Elisabeth Woodward ('Woodward'), Martin McHugh

Complaint - Leslie Moore v County of Butte, et al

1      ('McHugh'), Alfred Driscoll ('Driscoll'), Richard Thomas ('Thomas'), and Gary Wilson

2      ('Wilson').

3      **29.** Defendant Pamela Chambers ('Chambers') is a Domestic Violence Counselor, whose

4      acts alleged herein, was at all times material hereto, upon my information and belief,

5      employed in this capacity by co-defendant County at BCDA.

6      **30.** Defendant Anne Osborn ('Osborn') is a Marriage, Family, and Child Counselor

7      working in private practice and licensed and regulated by State.

8      **31.** I am informed, and so believe, and thereon allege that City, County, State, CPD,

9      BCDA, BCSC, BCSO, DOJ, and CSD, promulgated, encouraged, administered, and/or

10      permitted the policies, practices, customs, and procedures under which the individual

11      defendant employees/agents/officials of City, County, State, CPD, BCSC, BCDA, BCSO,

12      DOJ and CSD committed the acts or omissions complained of herein, and either

13      intentionally or recklessly, whether as a result of policies, practices, customs, or

14      procedures, or as a result of ineffective, non-existent, or inadequate training and

15      education, caused or were otherwise the driving force responsible for the acts or

16      omissions of said defendant employees/agents/officials as complained of herein, and I

17      allege that the policies, practices, customs, and or procedures of City, County, State,

18      CPD, BCSC, BCDA, BCSO, DOJ and CSD as determined and effected in the

19      circumstances complained of herein, constitute and/or engender a circumstance of

20      deliberate indifference to the health, safety, rights, welfare, and possessions of the citizens

21      of the community, of families, and of children such as K.T.

22      **32.** I am informed, and so believe, and thereon allege, that City, County, State, CPD,

23      BCSC, BCDA and CSD are ignorant of and/or intentionally ignored, the rights of familial

1  association and the existence and use of protective custody warrants pursuant to

2  California law, and the relevance of federal laws and precedent, and contractual

3  obligations, in the removal of children from their homes and the care of their non-

4  related/de facto/pre-adoptive/foster parents in the context of an investigation of a child

5  abuse referral, and that City, County, State, CPD, BCDA, BCSC, BCSO, DOJ and CSD

6  are ignorant of and/or intentionally ignored California law, and the relevance of federal

7  laws and precedent, in the rights afforded citizens of the United States including rights to

8  equal protection of the laws, due process and property rights.

9  **33.** I am informed, and so believe, and thereon allege that, at all times herein mentioned,

10  each and every defendant employee/agent/official of their co-defendant entities City,

11  County, State, CPD, BCSC, BCDA, BCSO, DOJ, or CSD, was acting either in their

12  individual capacity or the scope, purpose, and authority of said entities, and/or in their

13  capacity as an employee/agent/official of said entities, and with the knowledge,

14  permission, ratification, and/or consent of said co-defendant entities. (And that District

15  Attorney Ramsey, though only barely visible in this complaint, is at the heart of it.)

16  **34.** I am informed, and so believe, and thereon allege that each of the named individual

17  defendants herein, did knowingly and willingly, with a common intent and scheme set forth

18  in further detail herein below, conspire to injure me and deprive me of my rights, liberties,

19  and interests, as such rights as are afforded me under the United States Constitution and

20  the California State Constitution, and conspired generally to damage me and inflict great

21  injury upon me.

### III

### INTRODUCTION TO CASE

**35.** That's about all the 'legalese' I can do (and I had to copy that from examples filed in this court), so, in a nutshell, here's what happened:

**36.** Moore threatened to abuse his power as a police officer to conduct a retaliation vendetta against me if I left him.

**37.** After separation, the threatened vendetta is being carried out by Moore and those acting as his agents in the law enforcement and criminal justice community in a silencing campaign against me for my having had to get a protective order after the police response to my request for assistance in a situation involving domestic violence ('DV') resulted in an escalation of the violence.

**38.** In this retaliation vendetta/silencing campaign, defendants made false accusations against me.  K.T. was traumatically removed from my care without warning or warrant, he was not allowed any contact with any member of his family of origin, I was not allowed to speak in court, and K.T. was placed up for adoption to strangers.

**39.** In addition, I was deprived of my property without due process in the divorce.

**40.** The acts/omissions of defendants as complained of herein are violations of law and/or legislative or regulatory mandate, and human decency, and, in it's entirety, constitutes an egregious example of abuse of power.

**41.** The acts and omissions of defendants City, County, State, CPD, BCDA, BCSC, BCSO, DOJ and CSD, and individual employees/agents/officers of these governmental agencies as complained of herein below was not only malicious and outrageous, but sadly,

8

1    it exemplifies the all-too-typical terror experienced by victims of officer-involved domestic

2    violence (OIDV) country-wide, and even includes *physical* 'courtroom battering of the

3    victim', so,

4    **42.** Though I have been rendered disabled, destitute, and exhausted by the events

5    complained of herein below, simply because it is so horrifyingly similar to the experiences

6    of the many victims of OIDV across the country, I am determined to file this petition and

7    bring it to it's appropriate resolution because the manner in which I was retaliated against

8    and silenced is 'Standard Operating Procedure' in OIDV cases, and the danger of further

9    retaliation for, and the enormous difficulty of, filing a complaint such as this *is why it*

10   *continues to happen so similarly to victims all over the country* .

11   **43.** It is my hope and intent to resolve this case in the most efficient, expedient and least

12   costly manner possible.  So, since the case is so complex and conspiratorial, and involves

13   so many individuals and institutions, and so many civil and criminal violations, I address

14   the elements of each cause of action within the body of the complaint in chronological

15   order as much as possible in order to make it as clear as possible, and in order that it not

16   become so unwieldy as to preclude this petition for redress of grievance from even being

17   filed, which would be grievous.

18

19

20

21

22

23

# IV

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

**44.** I made exhaustive efforts to report to, and gain the assistance of, all appropriate agencies, administrations and attorneys in curbing that which is complained of herein below. But the law enforcement and criminal justice 'family' bonded together to protect one perpetrator of one crime rather than his one victim, and, in their determination to, as the union motto says: 'Maintain the *image* of a professional police officer', many people committed many crimes and caused *unimaginable* damage to many people, after which I gave defendants more than ample opportunity to address the damages (to the extent possible).

**45.** My efforts to gain assistance in preventing the damage, and to address it following, have not only been futile, but frequently resulted in further damage, so

**46.** Their refusals to address it properly will result in much higher cost to 'them', which is actually a cost to 'we' - the citizens - more corruption - harming, rather than helping, the citizens they serve.

**47.** But the high damages 'they' will pay in this case will serve 'we' the citizens in that:

      a) It will provide a reminder not to repeat this behavior against citizens, and

      b) It will be used to serve the larger community I have now become a member of

      . . . Victims of OIDV, legal abuse, and the all-too-frequent resulting PTSD.

**48.** I have filed claims for damages with City, County, and State, and have received rejections of my claims from each.

**49.** Proceedings in regard to Domestic Violence, Child Abuse and Divorce are finished.

Complaint - Leslie Moore v County of Butte, et al

10

1

V

2

**TIMELY FILING**

3

4    **50.**  The time statute for filing this complaint has not begun to run because of excusable

5    neglect because that which is complained of herein has been intense and ongoing,

6    rendering me utterly exhausted - physically, emotionally, and financially, and

7    **51.**  Because I am determined by Social Security to have been disabled since the

8    culmination of this travesty on April 23, 2008, and

9    **52.**  Because the case involves fraud, for which the statute is three years from discovery,

10   and

11   **53.**  Because the statute for domestic violence is three years, and the physically violent

12   aspect of it occurred two years ago, and named individual defendants have and are acting

13   as third parties to it since then, and

14   **54.**  Because final arguments in the final court case were not held until March 11, 2010.

15

16

17

18

19

20

21

22

23

# VI

## FACTUAL ALLEGATIONS AND COMPLAINT

**55.** K.T. was at day care on 9/12/07 when his mother, in a drugged and dangerous condition, went there intending to take him on an outing. The day care providers attempted to prevent this by telephoning the police to ask their assistance. CPD Officer Moore directed them to release K.T. to his mother anyway.

**56.** CPD detained a child in a dangerous situation on 9/13/07. When they discovered it was K.T. they called me.

**57.** I knew K.T. would have to be placed into a temporary foster home until legal foster placement with me was completed. Instead, as a 'professional courtesy' to Moore, Pamela Richards of CSD placed K.T. with me that night telling me and Moore to keep it quiet and cover it up quickly.

**58.** Patricia Parra, of CSD was assigned as K.T. 's social worker. She participated in the cover-up of Richard's professional courtesy by completing the procedure after K.T. 's placement in our home, reminding me to keep it quiet. After completing the procedure, she did not make any of the mandatory monthly visits and repeatedly refused to assist me in monitoring Dawn's visits with K.T.

**59.** On or about 1/2/08 Moore strangled me, threw me across the room, held me by the throat and bashed my head against the wall repeatedly, and then used threats to dissuade me from reporting this.

**60.** When I overcame the dissuasion of Moore and reported his abuse to CPD on 1/22/08, CPD Sergeant Merrifield and CPD Lieutenant MacPhail responded by telling me, 'Your

12

1   domestic problems are none of our business', and, 'What is it you want, do you want

2   Terry (Moore) to pay more attention to you?' Moore told me later that they had told my

3   abuser to, 'Deal with it.'

4   **61.** Merrifield and MacPhail refused my request that they tape record my statement, they

5   took no report of the violence, did not advise me of available resources to help me gain

6   safety, or advise me of the procedure for making a citizen's arrest.

7   **62.** They claim to have sent a memo, or memos, in regard to my report to CPD Chief

8   Bruce Hagerty. If this is so, Hagerty neglected his duty to initiate an IA.

9   **63.** This police response to my request for assistance was, in effect, validation of Moore's

10   presumed 'license' to abuse, and resulted in an intensification of the domestic violence

11   against me. He used assault and rape to re-establish his power and control and to punish

12   me for my having 'embarrassed him to his friends' by reporting the crime. And he began

13   making threats such as: 'By the time I'm finished with you, I'm going to look like a hero

14   for putting up with you!' And, 'You deserve what you're getting!' And that he would

15   make false accusations against me to cause K.T. to be taken from me if I left. And that he

16   would drive me crazy so that he could then 'Kill you and make it look like suicide.' And

17   that, 'If you report the abuse, who do you think they'll believe?'. And, 'Even they do

18   believe you, I can kill you from jail - I can hire one of my confidential informants to do it,

19   and they are very bad guys, and who do you think the jailers are?'

20   **64.** I sought the assistance of Anne Osborne MFCC for support during my escape attempt

21   and made her aware of the unique danger I faced because my abuser was a cop. She did

22   not disclose a conflict of interest in that she had worked with CPD as a DV counselor in

23   the past - even in the same unit as my abuser.

13

**65.** I made several very good divorce offers to Moore hoping to 'buy' my safety and freedom, and began having others stay at my house or K.T. and I would stay with others as a measure of safety.

**66.** Moore did not look at any of my divorce offers, but instead consulted with, and retained, attorney Wilson, who advised him to lie: 'Just tell the judge you want the house and he'll force it sold.' and, 'Force her to give up her careers and work a minimum wage job for the rest of her life.'

**67.** K.T. and I left the house completely until I was able to get a restraining order and residence exclusion.

**68.** I had difficulty finding an attorney due to conflict of interest because of Moore's position in the court community and because my name is the same as a local convicted child abuser. Attorney Elisabeth Woodward agreed to assist me. I made her aware that the child involved was my non-related grandson, de facto and pre-adoptive child, and of my uniquely dangerous situation because of my husband being a police officer.

**69.** Based on information and belief, after I left, Moore became aware that I was going to get a restraining order and so arranged for a confidential informant to burglarize and vandalize his truck to create suspicion on me that I was a violent and angry person.

**70.** Court to address my request for a temporary restraining order (TRO) was held on 2/27/08. BCSC Commissioner David Gunn was seated. Woodward met with Gunn in the back room prior to court. I clearly indicated the reason for my request was DV, that my de facto and pre-adoptive child was to be protected, and that I was under threat of retaliation and duress. Gunn stated in the record that he could not issue a non-CLETS order in cases of DV but proposed a stipulation to a non-CLETS order 'to protect

14

Moore's job'. Woodward then came out and advised me that I would have to make this stipulation in order for Moore to keep his job. I believed that if Moore lost his job, the consequences to me would be swift and severe, so I stipulated. Then Woodward argued for Moore to be allowed to remain in the residence through the weekend. I did not agree, and Moore vacated the house that evening.

**71.** Gunn did not address the issue of the safety and custody of my child. In setting the date for Moore to respond, he made a disgusting display of favoritism toward Moore, undermining my confidence in the impartiality of the judiciary.

**72.** At this point, Moore would have had the assistance of powerful police union attorneys at no cost to himself in comparison to myself, who, because my report of DV had been mishandled by CPD, did not even have the assistance of Victim/Witness to help me with my medical needs or to help me understand the system and protect myself from the previous and following events complained of herein.

**73.** After I got the TRO, CPD Captain John Rucker contacted me. He refused to take my complaint of Merrifield and MacPhail's inappropriate response to my earlier request for assistance. I told Rucker I would not participate in an Internal Affairs Investigation ('IA') into the DV due to the result of CPD's earlier involvement, but CPD continued to harass me to give a statement.

**74.** As the 27-year wife of the police union boss, my intelligence and instinct in re IA's insisted I not participate in it, but Osborn insisted I ignore my intelligence and instinct as she was sure that the police were good and that I needed to see it. This is when she revealed her past affiliation with CPD and offered to use that affiliation to make arrangements for me to give a statement. I made her sign a contract limiting the content of

15

1    her communication with CPD to asking them to back off and perhaps I'd give a statement

2    after things settled down. She also asked permission to confer with Woodward in re

3    'safety concerns only' and we entered a contract to same.

4    75. CPD Lieutenant Michael O'Brien was assigned to conduct the investigation. He

5    continued to harass me for a statement and his statements and actions validated my

6    intelligence and intuition that, in this IA, the 'tactics' would be used against me as if I

7    were the bad guy.

8    76. So I telephoned O'Brien's supervisor, Captain Maloney, asking him, "You guys

9    already told me my domestic problems are none of your business, why is it now?" His

10   response that, "It would have been if you'd alleged any physical violence" indicated to me

11   (and it turned out to be true) that officers Merrifield and/or MacPhail had lied to the

12   investigation, as I had not only alleged physical violence verbally several times in my

13   report to them, I even enacted a portion of the early January incident. So I released

14   myself from this 'investigation'.

15   77. Moore arranged a date to retrieve his belongings from my house. I arranged to be

16   away while he did so. I asked Captain Maloney to provide a stand-by because I was

17   concerned that Moore would do some nefarious act while at my house alone. Maloney

18   refused this request because the earlier perversion of justice by Gunn precluded my TRO

19   from being visible to Maloney.

20   78. Based on information and belief, on the date I had to allow Moore to go to my house

21   without a stand-by, Moore and an accomplice fabricated a scene to create suspicion on

22   me that I was a violent and angry person (that he had brought divorce paperwork along

23   with roses and chocolates and I had thrown the roses at him and rubbed the chocolates in

1    his chest)

2    79.  Wilson had informed me in an earlier unrelated case that it was his custom and

3    practice to file things late in order to put the opposition at a disadvantage and that it is the

4    custom and practice of BCSC judges to overlook this.  Wilson and BCSC followed this

5    practice in this case.  Wilson sent Moore's response to my request for a restraining order

6    so that it arrived at Woodward's office only one day before the hearing on the matter

7    80.  At the hearing on 3/25/08, BCSC Judge William Patrick was seated (I think based on

8    records, but I'm not sure as I wasn't there as detailed below).  Woodward did not show

9    me Moore's response, and in fact told me that the hearing that day was only going to be

10   about spousal support.

11   81.  Though she had not known, researched, or advised me that the earlier stipulation

12   arranged to protect Moore's job was unnecessary, she should have been aware of it and

13   advised me of it at this time because Moore had indicated this fact in his response.  Her

14   not showing it to me and not objecting to its being delivered only one day before court

15   denied me the opportunity to know this and also prevented me from discovering that

16   Moore was making his threatened false accusations, thereby preventing me from

17   attempting to protect myself from them.

18   82.  Since Woodward told me that court that day was only about spousal support, and

19   Woodward was arguing that I should accept a paltry 10% of Moore's earnings, and

20   because I was fearful of taking spousal support as taking *any* money from Moore would

21   have increased my already extreme danger, I told Woodward I didn't want it for this

22   reason and I asked her if I could leave.  She told me I could.

23   83.  Before leaving, I asked Wilson to schedule court in re the divorce for six weeks out.

Wilson scheduled it for three months out instead and Woodward must have agreed to this.

**84.** After I left, the DV was addressed in court in my absence, by dropping it. The inappropriate non-CLETS order was issued permanently and

**85.** The judge again did not address the issue of the safety and custody of my de facto and pre-adoptive child.

**86.** In later declarations to the court, both Moore and Wilson commit perjury, claiming I was in the courtroom when this was done.

**87.** I wrote Wilson a letter telling him I was glad he was handling the divorce and let's get it done. I called him several times attempting to arrange this. He returned none of my calls.

**88.** After I made it clear to CPD that I was not going to give a statement to their cover up of the DV, they turned me over to BCDA, who began to harass me for a statement.

**89.** These investigations were infringing on my life, which, except for CPD and BCDA interference, was wonderful since the exit of Moore, but Osborn continued to insist I ignore my intelligence and instinct in re these investigations.

**90.** So I agreed to go to the BCDA's Office on 3/17/08. I made it very clear to BCDA's investigator, Lieutenant Rick West, that, if anything, he should investigate CPD's inappropriate response to my request for assistance and that I did not want to pursue charges in regard to the DV itself. West told me he would not investigate my actual complaint, but I insisted, and he agreed to consult with 'higher-ups'.

**91.** So I returned to BCDA on 4/8/08, at which time West informed me that he had checked with 'higher-ups', likely BCDA Michael Ramsey and/or his chief investigator, Kory Honea, in regard to investigating my complaint, and that he was told that BCDA

1    would not take my complaint.

2    92. Suspecting by this time that Moore was turning this around on me, my interest in the

3    investigation was only in avoiding this, and since the consequences to Moore for his acts

4    would only be six weeks counseling (as it had been for prior abuses others had reported), I

5    gave West a complete and detailed written statement and agreed to be interviewed.

6    93. The investigation seemed to be focused on the early January event. At West's

7    request, I enacted the entire event for him. He informed me that what I described was a

8    crime but that no charges would likely be filed as the decision on whether to file was based

9    'not on whether he did it, but whether it can be proven.'

10    94. I felt Woodward was representing Moore's interests and since the divorce should be

11    simple and speedy because my offer was greatly in Moore's favor, I let Woodward go and

12    she sent me her paperwork. I received it around April 15th. This was the first time I saw

13    Moore's response - but not all of it - she had not provided the page where he had

14    indicated the stipulation was unnecessary because the 'no guns' thing was 'not applicable'

15    to him. But this is when I learned that Moore had in fact made a couple of the threatened

16    false accusations. He, as is typical in OIDV, had told me that if I reported the abuse,

17    "Who do you think they'll believe?" And that he would simply 'tell them you're mental' to

18    discredit me. His declaration to the court consisted of two statements: That my

19    allegations were 'false and untrue' and that I had 'mental issues'.

20    95. On 4/17/08, I showed West Moore's perjury and told him Moore was impeached

21    because K.T. had witnessed the violence. West excused Moore's perjury. He refused to

22    accept evidence I offered, including my medical records and statements of any of my

23    family and long-term friends and neighbors that would have attested to the falsity of any

1   'mental' allegation and vouch for my honesty, and he did not pursue evidence he should

2   have pursued as an investigator, most importantly the crime scene that would have verified

3   the truth and accuracy of my enactment of the January event.   When I persisted that he

4   consult the evidence, he told me that I was now the suspect, and so the subject, of the

5   investigation.  So I tried to defend myself by reminding him that there was a witness.  At

6   this, he made fraudulent threats, telling me that K.T. would have to be put on the stand

7   because he witnessed the violence and the opposing attorney would 'rip him to shreds and

8   traumatize him on the stand.'  So of course I released myself from this 'investigation' as

9   well.

10   **96.**  The interviews of me by West were tape recorded.   The portion of his tape that

11   contains West's excusing Moore's perjury, identifying me as the suspect, refusing to

12   consult the evidence, and making fraudulent threats, has been destroyed.

13   **97.**  West had failed to provide a domestic violence counselor to me at the outset of his

14   investigation.  He did so in the middle of this third meeting.  The counselor was Pamela

15   Chambers.  West's narrative of his investigation shows that Chambers' visit with me was

16   used to cover up the destruction of that portion of the tape wherein West excused

17   Moore's perjury, identified me as the suspect, refused to consult the evidence, and made

18   fraudulent threats to silence me.

19   **98.**  In a later meeting I had with Chambers, West secretly watched and/or listened from a

20   remote location though DV counselor interviews are absolutely confidential and not to be

21   made available to any proceeding without explicit permission.

22   **99.**  The threats being made on me by West, and the danger the false accusations by

23   Moore represented to me, and the lies of Merrifield and MacPhail, caused me to become

Complaint - Leslie Moore v County of Butte, et al

fearful and angry and I just wanted to be left alone, so I made an appointment with the

City Manager to inform him of the shenanigans CPD was involved in and to ask his

assistance, then . . . . . . . . . . . . . . . . . . . . . .

**100.** On 4/23/08, 92 days after I asked CPD for help, 56 days after I asked BCSC for

help and removed any danger of K.T. witnessing further DV, and 38 days after BCDA

became aware of the DV, West and CSD conspired and Erin Sweet and/or Jorje Lozano

and/or Patricia Parra of CSD detained K.T. from his day care without warning or

warrant, though they knew he was not in immanent danger of serious bodily injury, or in

fact any danger whatsoever.

**101.** CPD Lieutenant Linda Dye and/or doe at CPD provided a 'stand-by to keep the

peace' to allow CSD to abduct K.T. from his day care without warning or warrant though

she knew he was not in immanent danger of serious bodily injury, or in fact any danger

whatsoever.

**102.** The trauma to K.T. that West had fraudulently threatened was minor in comparison

to the trauma he assisted in actually inflicting on him in that K.T. lost his life-long primary

caregiver, his home, his entire family of origin, all of his clothes, toys, and books, his pets,

his social, educational, recreational, and spiritual communities and activities, and the

happy life and bright future he felt so secure in, all in one fell swoop - and without a single

goodbye to any member of his family or to his friends.

**103.** And CPD dispatch prevented me from even calling my family for support during this

traumatic event.

**104.** CPD did not conduct a child abuse investigation, and

**105.** CSD never contacted me for an interview, and

2-1

1      **106.** Did not give me the contractual 7 days written notice prior to removing K.T. from

2      my care.

3      **107.** I was not provided any information after K.T.'s detention and CSD would not return

4      my calls. I kept calling higher ups and, over 24 hours later, they left a short note on my

5      door stating their excuse for committing this violence against K.T. and myself was because

6      he witnessed the violence committed against me nearly four months prior - violence I had

7      taken extreme measures to protect him from since the police had refused to help. The

8      note said there would be a hearing on 4/28.

9      **108.** I left messages on the telephone answering machines of Wilson, Moore, and

10      Moore's family, offering to give Moore everything in the divorce if he would just let me

11      and K.T. have safety and freedom.

12      **109.** I called higher ups at CSD until I was provided a partial copy of their petition to the

13      court. In it, and other documents I was later able to view, Sweet, and/or Lozano and/or

14      Parra:

15      **110.** Committed perjury by stating that they 'called and left messages' prior to their

16      detention of K.T. and

17      **111.** Committed perjury by stating that my 'car was not in the driveway' the day they

18      detained K.T., when in fact, shortly before they abducted K.T., I pulled into my drive to

19      discover a strange car in it, waved hello and they backed out and sped off (my daughter-

20      in-law told me it had been CSD), and

21      **112.** Committed perjury in stating I 'allowed K.T.'s mother unauthorized visits with

22      K.T.' and

23      **113.** Committed perjury by saying the DV event of early January had occurred 'around

22

April 17th and

114. Committed perjury by stating that all the domestic violence I reported had 'occurred in the eight weeks prior to K.T. 's detention' though they were aware of the exact dates of the DV - all more than eight weeks prior, and

115. Committed perjury in stating that I 'refused to provide specific dates of the DV', and

116. Intentionally excluded the evidence they had that Moore had been out of my home the entire eight weeks they claimed the DV occurred, and

117. Intentionally excluded the evidence that I had taken extreme measures to protect K.T. after CPD's inappropriate response to my request for assistance, and

118. Declared K.T. 'not credible' as to what occurred in the domestic violence incident he witnessed in order to protect Moore, yet they base their false claim that they 'did not know if Moore was living in the house' on K.T.'s credibility, and

119. Committed perjury in stating I was 'consumed with the DV' when in fact I wanted nothing to do with the investigations, was harassed by CPD and BCDA to participate in them, and finally threatened when I did, and

120. Committed perjury in stating I was 'adamant that Moore be charged with DV', when in fact I was adamant he not be, and

121. Committed perjury in stating I was 'adamant K.T. be interviewed' when in fact I did not want him to be and didn't ask him to be until I was told I was the suspect, and

122. Intentionally excluded the evidence that K.T. was undergoing medical treatment for a dental problem, and they did not research the medical condition itself.

123. CSD and/or BCSC scheduled the hearing in re the accusations against me in CSD's petition to the court for five days after his detention.

25

**124.** I arrived 15 minutes earlier than the scheduled 8:30 hearing to find my case was in session so I entered the courtroom. The bailiff, using her hands and body bulk, shoved me out the door. I tried to wait patiently and then looked in the window a few minutes later. The bailiff body slammed the door and so the door slammed me and then she continued to push and shove and yell at me.

**125.** BCSC Judge Tamara Mosbarger was seated. She did not allow me into the courtroom until after the hearing, then she did not ask, or allow me, or any of the several members of K.T. 's family of origin who were also present, to provide any information to the court and did not allow me to address the false accusations made against me, but she simply read CSD's petition, ordered K.T. be kept away from his home and family forever, set the jurisdictional hearing for nearly a month out, and got up to leave. I begged to be allowed to speak, but she turned her back on me and walked out the door.

**126.** Mosbarger, and/or Gunn, and/or Tamara Solano, Court appointed Attorney for Dawn, and/or Amy King, Court appointed attorney for K.T., and/or David Kennedy, Attorney for CPS, and/or Larry Levine of State Adoptions, and/or K.T. 's CASA worker, and/or K.T. 's many social workers at CPS, did not:

**127.** Thoroughly investigate the accuracy of allegations on the petition and/or

**128.** Review the underlying investigative report or assess the merits of it and/or

**129.** Ascertain the facts or interview witnesses, including me, his life-long primary caregiver, or any member of his family of origin, or any of my close and long-term friends and neighbors, or K.T.'s doctors and dentists, who would all have vouched for the excellent care I gave K.T. and/or

**130.** Interview the child as to his wishes for placement and/or

**131.** Place the child in the next non-related family member home, though several applied and got no response, and/or

**132.** Ensure timelines for hearings were met and/or

**133.** Meet with the child regularly and/or

**134.** Communicate with foster parents.

**135.** All in all, the parties did not advocate for the physical and emotional well-being of the child or his best interest, but instead

**136.** Took actions that were detrimental to him.

**137.** Sweet and/or Lozano and/or Parra would not talk to me or my family after K.T. 's detention, yet they gave others information to pass on to me: That 'they could not leave a child in a home where there was ever domestic violence.' Considering the most common threat made by abusers is that they will take the kids if you report the abuse, a policy like that would make CSD the most dangerous abusers in that, if you report the abuse they DO take the kids, but I relied on this fraudulent information to the detriment of both K.T. and I, as will be noted later.

**138.** I prepared a declaration to the court and a request for a hearing. I gathered signatures of every member of my family and all my long-term friends and neighbors in support of my plea that K.T. be returned home. In these contacts, I was informed that Moore had been 'working with Dawn 'to get K.T. taken away from Leslie' since shortly after I had gotten the restraining order.

**139.** When I informed Levine of State Adoptions about K.T. 's abduction, his instant and correct response was to jump up from the table and exclaimed, 'I know what CSD is doing. They are covering their asses for the professional courtesy and for not doing the

home visits.' He also correctly intuited that K.T. was being used as a pawn in a vendetta and expressed that this was a terrible thing. Levine told me that the DV would not affect my adoption of K.T. and that the action I had taken to protect K.T. had demonstrated what he already knew: How very much I love and am devoted to K.T.

**140.** Levine called me later asking questions that seemed to me as though he was going to 'sell' K.T. to someone else. This turned out to be true. Levine told me it was because 'the police were concerned about my mental condition'.

**141.** Levine then hurt K.T. further by, after K.T. had recently had everything in his life taken from him in one fell swoop, he took K.T. from the last scrap of his familiarity: His day care and a foster placement with people he knew from the day care.

**142.** I filed my request for a hearing and the letter and signatures with BCSC on May 2 and received a filing from the court on May 5 granting me the hearing. By this time there were so many powerful people acting with malice and oppressing me, I felt helpless and, in my severely distressed condition over the detention of K.T., I believed I needed help, so I retained another attorney, Martin McHugh, to represent me in the hearing. I told McHugh that my situation was complicated and provided him with information I had obtained regarding de facto parent cases and OIDV. McHugh told me that it was not complicated, refused the information I provided, and told me that I did not need to go into detail about my case because it was cut and dried that I was K.T.'s de facto parent. I told McHugh that this was true but that I suspected I would not be allowed to speak in court. McHugh told me, 'They can't do that' (not allow me to speak) and so he rebuffed my concerns as though they were unfounded and unreasonable. I was able to get into the conversation the story of defendant Gunn's display of favoritism/discrimination on

1    February 27.

2    **143.** I was not allowed to speak in court on the date of my hearing, because

3    **144.** All parties to the case: Mosbarger, King, Solano, Kennedy, Sweet and/or Lozano

4    and/or Parra, denied having received my filing and the court's filing granting the hearing

5    though the court clerk assured me the filings were made properly and within the

6    appropriate 10 days prior to hearing, that the filings were entered into the computer, that

7    she had served the filings by placing the stamped copies I provided into each of the parties

8    'boxes' at BCSC, and that the hearing was calendared.

9    **145.** McHugh told the court he would re-file my request and re-calendared the hearing for

10   another month away.

11   **146.** Then, though I had informed McHugh of Gunn's behavior, McHugh stipulated to

12   have Gunn hear the case without consulting me.

13   **147.** After court, I reacted emotionally that I had not been allowed to speak, and that

14   McHugh had refused to believe that I would be prevented from speaking, and to

15   McHugh's stipulation to Gunn, and especially to the fact that K.T. would be kept away for

16   another month, and was still not even allowed any contact with any member of his family,

17   even by telephone. I was tortured - being essentially bound and gagged while a child I

18   love was being hurt like this. At this display of emotion, McHugh threatened to withdraw

19   as my attorney.

20   **148.** I learned later that McHugh did not even file my request as he had told the JV court

21   he would do, but

22   **149.** Strangely, they have it now.

23   **150.** At the next hearing on K.T. 's case, on 6/19/08, McHugh did not show up at court.

Complaint - Leslie Moore v County of Butte, et al

27

151. I assumed he had withdrawn as mentioned and I told Gunn so. But Gunn would not allow me to speak in court because McHugh was still attorney of record so he continued the case to September, after Dawn's parental rights were terminated, thereby causing K.T. to be kept from his family for five months before even opening the possibility of his return home, which Gunn intimated was not going to happen anyway, though there had been no hearing.

152. An unknown agency or agencies were spreading around town, 'Don't talk to Leslie. She is being investigated for child abuse and her house is bugged and her phones are tapped.' Though it is usually not true that the police have a person's house bugged and phones tapped, and it was likely not true in this case, this is a common tactic used by police to intimidate witnesses and it had the intended effect.

153. But the part about my being investigated for child abuse was true.

154. Dawn later remorsefully intimated to me that she participated in the fabrication of false evidence against me by Moore in the 'roses and chocolates' event, and that she 'told lies to Jorje' during the period she was 'working with Terry (Moore) to get K.T. taken away from Leslie.' And she warned me that 'Jorje is out to get you. He has a lot of bad stuff against you and you're gonna get creamed'

155. I was given no notice that I was the subject, listed as the suspect, of an investigation, and

156. Never interviewed as the accused , and then

157. CSD placed my name on the Child Abuse Central Index for 'emotional abuse - wittness to domestic violence' (misspelling intentional).

158. They did not provide a reason to State for their failure to interview the accused.

159. State accepted this listing though there was no interview of the accused and though no letter was provided to them as to why there was no interview of the accused.

160. I called CSD to get a copy of the grievance form that had been attached to the notification that I had been convicted of being a child abuser. Eric O'Berg of CSD told me that only my name was listed - the victim of the crime. I verified this with O'Berg 3X.

161. This alerted CSD to this 'mistake' and the 'copy' they sent me was not a copy but a newly-typed document (with 'witness' spelled correctly). And the document to State that originally had only my name listed, now had Moore's name too.

162. I filed the grievance with Butte County Administration, asking for a hearing on the matter. Peter Meadowsong of County Administration did not grant a hearing.

163. But removed my name from the list - by convicting me of having made a 'false report' of DV, presumably in order that Moore be exonerated.

164. I demanded an evidentiary hearing and was denied.

165. CSD had not even investigated the real child abuse their policy defines as 'creating an atmosphere of fear' though I had reported it and Moore admitted it.

166. This had occurred in the escalation of the DV that followed my request for assistance from the police: CSD was aware and agreed that K.T. had witnessed Moore banging my head against the wall, and was aware that Moore admitted that he told K.T. shortly after that that, 'because he is a cop, he has to break people's heads open if they don't do what he tells them to.' The fear this instilled in K.T. was not only logical, it was evident in his reaction. I had called a police friend of Moore's, Jose Lara, to ask help when this happened, but he too turned us over to our abuser.

167. Both CPD and BCDA, though the investigations were completed long before, held

29

1    them until 6/23/08 - one day before the next 'hearing' on the DV, in keeping with the

2    pattern and practice of doing this in order to give advantage to Moore and to place me at

3    a disadvantage. I was given neither report.

4    **168.** June 24 the DV was on calendar. I arrived to find Moore and his attorney Wilson in

5    conference with McHugh though McHugh had supposedly withdrawn and had no

6    information, and so no authority, to discuss the DV or divorce. I told him to cease and

7    desist.

8    **169.** He went into a conference room alone with Wilson. When I tried to intervene, the

9    bailiff physically shoved me out the door.

10    **170.** When McHugh came out I lit into him. He still did not respect my demand that he

11    stop interfering in this case when, later that same day, he appeared in court in my name, so

12    the judge would not allow me to speak, and court began with a 'back-room' of course.

13    McHugh told me what was discussed in the back room was that the case was delayed

14    another month 'due to the recusal of two judges, Patrick and McNelis', which happened,

15    but the court records indicate that the reason for the delay was an 'agreement between

16    attorneys', which McHugh did not tell me anything about.

17    **171.** Wilson told me that day not to communicate via telephone, so I switched to certified

18    mail.

19    **172.** I then asked McHugh to sign a substitution of attorney in the cases. He refused,

20    stating that he had not represented me in the divorce/DV cases, though he had conducted

21    negotiations, went into the back room with the judges, and appeared in my name in court.

22    **173.** On or about June 25 and 26, 2008 I called CPD Captain Maloney to get the

23    conclusion of the IA. He tried to deceive me that I was not entitled to the conclusion. I

researched and learned that statute and policy indicate that I do get a copy of the conclusion. Then Maloney told me that the investigation was not concluded.

174. So I wrote a letter to Chief Hagerty telling him that I wanted to add information to the open investigation. Hagerty did not reply.

175. So I went to CPD and was directed to Lieutenants Michael Webber and O'Brien. I told them they needed to put my report on the proper form so I could get help from Victim/Witness with my counseling expenses. There is still no report on file.

176. At my meeting with Webber and O'Brien I had my DV advocate on the telephone as witness. Immediately after the meeting, Webber telephoned my DV advocate opening with, "You know Leslie has mental issues, right?" As though this were a fact and in an attempt to undermine my credence.

177. By this time I had a new counselor - one with expertise in PTSD. She contacted Victim/Witness to ask them how I might, without a police report, file a request with Victim/Witness in order to gain assistance with my counseling expenses. The person contacted told her, "Don't bother, there is a bias" evidencing that the defamation by these agencies had spread far and wide.

178. The conclusion of CPD's IA was sent to me later, dated to indicate it had been concluded June 23, two days prior to the date Maloney told me it was not concluded. BCDA told me their investigation was a 'regular' one, but when I asked for it as a regular one, they denied it to me because it was 'sensitive.'

179. Meanwhile in the JV case, an attorney who had witnessed the railroading in court had offered to file something asking the court for something-or-other, which was calendared for September 4, 2008. This new attorney met with Mosbarger who

1    'recognized the politically charged nature of the case' and threw me a bone by allowing

2    me at least two one-hour supervised visits with K.T. per month, revocable at the whim of

3    CSD and/or State Adoptions.

4    **180.** These visits were to be arranged by CSD, who was present at court when this was

5    decided. I began calling them and leaving messages asking to arrange the visits. They did

6    not return my calls as usual. So I went to CSD's office. They told me to arrange the

7    visits through Youth and Family. So I began calling Youth and Family to do so but no

8    calls were returned. So I went to Youth and Family's office. Youth and Family told me

9    CSD had taken them off K.T. 's case.

10   **181.** When I was finally able to arrange the visits much later, I had to meet with Lozano

11   and Parra first. In this meeting they told me that they took K.T. because I 'failed to report

12   the abuse'. When I reminded them I had done so - to CPD, BCSC, and BCDA, they

13   changed their excuse to that they took K.T. because of my 'emotional condition.' So I

14   asked, 'Before or after you took K.T.?' They said, 'After'. Expecting a woman not to

15   react emotionally to a child being taken is crazy. They hurt you and then punish you for

16   crying - it's called 'crazy making' - and it is a standard DV tactic.

17   **182.** After being traumatized by the removal of K.T. , and tortured by not being allowed

18   to speak or present evidence while a child I love was being hurt, and terrorized by the acts

19   of CPD,CSD, BCDA, BCSC, against which I was not only helpless, but when I asked help

20   I was hurt instead, resulted in Severe Emotional Distress, they claimed I had an 'inability'

21   (disability) and used this to discriminate against me, so essentially, instead of helping me

22   and K. T. gain safety from the abuses that were causing the SED, they had abused us

23   further because I was hurt by the abuses.

32

**183.** There is mention by Sweet and/or Lozano and/or Parra that another discrimination factor was my religion.

**184.** But it was my political affiliation, complainant against a police officer, that was the real reason for the discrimination and resulting use of a child as a pawn in a retaliation vendetta/silencing campaign.

**185.** The DV case was on calendar again on 7/22/09. BCSC Judge William Patrick was seated (though previously recused based on a self-proclaimed bias).

**186.** Wilson absolutely and repeatedly refused to negotiate the divorce, and then told the judge he would agree to negotiate if I agreed to take the case off-calendar.

**187.** Patrick agreed to this though it was obviously a design on Wilson's part to take advantage of my disabled condition and disadvantaged position in that it caused me to lose the value of back spousal support.

**188.** The court incorrectly attributed the request to take the case off calendar to me.

**189.** On that date, Wilson told me not to communicate via certified mail either.

**190.** I also provided another complete declaration of disclosure and offer on that date. Wilson tried to dissuade me from filing a proof of service of this.

**191.** I attempted to file the proof anyway but was not allowed because McHugh had refused to sign a substitution of attorney and had never withdrawn.

**192.** On July 22, the court ordered mediations to be arranged. Wilson left only two attorneys on the list of possible mediators and I was to check with them for conflict of interest. Attorney Alfred Driscoll was on the list. When I contacted him he convinced me to retain him instead. By this time, due to the evidenced disadvantage I was in and Wilson's absolute non-cooperation or communication in the divorce in the five months

1    since I had filed, and having been taken advantage of to the tune of 20,000 or so in

2    spousal support arrears at the last court date, I went ahead and retained Driscoll on or

3    around July 25, 2008.

4    **193.** I told Driscoll my interest was to: Get Moore to provide a declaration of disclosure,

5    do the negotiations, file the joinders for my retirement accounts, and get this divorce over

6    as quickly as possible. I told him specifically not to waste time asking for spousal support

7    but only to calculate it's value in order to offer it in trade for assets. Driscoll did none of

8    the things I asked him to do but instead motioned for spousal support.

9    **194.** Driscoll wrote a declaration and Income and Expense form and asked me to sign it.

10   I made corrections and was told they would be made after I signed it. He filed the motion

11   without the corrections.

12   **195.** The motion Driscoll scheduled did not appear on the on-line case calendar as was

13   typical when the DV case was calendared due to it's 'sensitivity'. I telephoned Driscoll's

14   office to check if there was anything upcoming and was told there was not, when in fact

15   Driscoll was in court in re my case that very day, so I was not in attendance on that date,

16   while BCSC Judge (which one is unknown to me because I was not there - the records

17   show it was either Lamb or Patrick or McNelis): Formally dismissed the DV case,

18   arranged temporary spousal support (which was imputed as if I should be working though

19   I was very nearly gravely disabled at the time by the events occurring, and though no

20   Gavron advisement was issued), and no support at all was ordered for the six months since

21   separation.

22   **196.** Driscoll did not arrange for the mediation, telling me that it would not likely occur

23   until early spring - five months later.

34

**197.** So I told him to bifurcate the divorce and do my QDRO so I didn't lose the monies that would be payable from my PERS retirement beginning March 26, 2009. He did not do this.

**198.** On or about October 23, 2008, I interrupted someone attempting to steal stuff out of Moore's truck, which was still parked on my property since his departure. I sent them packing and telephoned the police. Sergeant Fonseca responded to this call by towing Moore's truck away to protect it, which I asked be done, but he left me to confront the thief on my own, which I did. Fonseca refused to even take a report.

**199.** Moore, in violation of restraining orders, has me under surveillance. On or about October 27, 2008, Moore and Wilson arranged for Wilson to go to my house on a day they thought I was not home in order to take photos to use against me (of my being unable to maintain the yard due to the damages already inflicted and intensity of the ongoing retaliation/silencing).

**200.** But I was home, and was alerted by my dog that someone was on the property. I caught Wilson coming out of my back yard and sent him packing.

**201.** I phoned CPD just to 'make a record' of this, telling the dispatcher not to send an officer because it had already been declared and demonstrated that I am not allowed to make reports of people crimes (the DV), property crimes (the auto burglary), or to make complaints (of CPD's inappropriate response to my reports of people and property crimes). Shortly after making the call I saw Fonseca sitting in his patrol car nearby watching my house. I approached him and reminded him that I am not allowed to make reports of any kind. At this point Fonseca made it clear that I was now not even allowed to 'make record' when he drove away shouting, "Don't call us anymore!"

35

1    **202.** Fonseca and/or Dye and/or Doe at CPD caused a notation to be placed into the

2    dispatch computer that 'no officer is to take reports or complaints from Leslie Moore

3    unless it is a crime in progress'. Pretty twisted considering the crime in progress (a

4    felony) is this conspiracy to prevent me from reporting crimes or making complaints.

5    **203.** Driscoll threatened to withdraw as my attorney if I reported Moore and Wilson's

6    contempt of court orders to the court. Paying someone to threaten me using undue

7    influence was too much, so I said O.K.

8    **204.** I checked with Driscoll's accountant and found there was 562.00 left in my account.

9    I asked Driscoll to use this to do at least one of the things I had paid him to do before he

10   withdrew - file my joinders. Driscoll told me there was no money left and did not do it.

11   So I had paid Driscoll 3,540 to protect Moore and Wilson and to do the one thing I asked

12   him not to do.

13   **205.** I had to hire someone else to do the joinders. The one they filed with PERS was

14   unsuccessful and North State Public Safety Retiree Medical Trust (of which Moore is the

15   trustee), was non-cooperative and threatened litigation if I did not withdraw my joinder. I

16   was at least able to get the PERS joinder filed myself later.

17   **206.** Immediately after Driscoll told me he was going to withdraw, I telephoned Wilson

18   to inform him and ask him to participate in the court ordered mediation/negotiation.

19   Wilson did not respond to my call.

20   **207.** I attempted to file a motion to compel Moore to provide a declaration of disclosure

21   and to participate in the negotiations as it had been eight months since I had filed for

22   divorce and Moore/Wilson had not done even the first step. I was not allowed to file

23   these motions because Driscoll took three and a half months to withdraw.

36

**208.** I asked Driscoll for my paperwork and his work product. He refused to provide it unless I signed a substitution of attorney, which I would not do as I wanted the opportunity to address, on the record, the reason for his withdrawal, and ask for a return of my retainer. He did not show up for his withdrawal. And the court would not allow me to speak to it.

**209.** After Driscoll's withdrawal, I again asked for his paperwork and was told he would only give it to me *after* I signed a statement saying that he'd provided everything, so I did. Then I looked through the paperwork to discover a document was missing. I asked the secretary where it was and she went to another file and pulled it out. I told her, "You just made me sign saying you gave me everything and yet you have a whole other file of my documents. Give them to me." She refused so I left. Driscoll had done no discovery himself, failed to return critical documents I had been able to obtain in my own discovery, which are now being denied to me, and Wilson is withholding the copies I provided him.

**210.** Driscoll later asked an attorney (one who had witnessed the railroading in the Juvenile court and offered to file an appeal for me) to divulge whether the information I had given Driscoll in re this entire travesty were going to be used to file a civil action.

**211.** Shortly after this, I was in the lobby of the BCDA's office when CSD's attorney Kennedy walked in for 'an appointment with District Attorney Ramsey and Al Driscoll'. When Kennedy turned and saw that I was there and had overheard this, his reaction was that of 'Shit! Caught!' At my meeting with BCDA Ramsey, he told me he would not investigate the pattern and practice goings-on in this case.

**212.** I telephoned Wilson again in January to ask again to negotiate. He agreed to do so after Driscoll's withdrawal and then immediately filed for a trial instead - on 1/16/09 - and

37

1    he mailed me notice of this postmarked 2/3/09.

2    **213.** This is when I received Moore's first declaration of disclosure - 11 months into the

3    divorce before he took even the first step.

4    **214.** TRAC was set - not 45 after discovery was complete but 28 days after discovery

5    could even begin due to this being Moore's first communication and its being delivered to

6    me 17 days late.

7    **215.** The declaration confirmed Moore intended to carry out his threat to leave me

8    homeless and destitute and to accuse me of making false allegations of DV and it was full

9    of false documents and non-disclosure of assets.

10   **216.** At TRAC, James Reilley, presiding judge of BCSC, was seated.  I attempted to

11   address the crimes being committed against me, the treatment I was being subjected to,

12   the delays of the divorce, the frustrations of discovery, and the loss of the PERS monies

13   that was beginning to occur at 2,500 per month.  By this time I had my summary of the

14   retaliation/silencing down to a sound bite, knowing I'd not be allowed to speak long in

15   any court, if at all.  Reilley had the bailiff shove me out the door as soon as I began to

16   speak.

17   **217.** But not before he assigned Commissioner Gunn to hear the case though I said in

18   open court that I did not stipulate to have a commissioner hear the case.

19   **218.** So, having been shown that I am not allowed to make reports of people or property

20   crimes or to make a complaint, or expect assistance of the judiciary in protecting my

21   interests, and would even be prevented by the judge from reporting victimization to a

22   judge, I tried to make a citizen's arrest for at least the minor restraining order violations

23   and trespass, hoping to open a door to escape the 'Blue Wall of Silence.'  Deputies

38

1    Windsor and Lang of the Butte County Sheriff's Department prevented this. They did

2    not ask for, or allow me to provide, authority and probable cause for my arrest but instead

3    physically blocked me so that Moore and Wilson could get away.

4    **219.** After the TRO violations by Moore and Wilson, Dye at CPD, Ramsey at BCDA, and

5    BCSO told me that my being under surveillance and Moore sending others to trespass on

6    my property were not violations of the court order that clearly indicates otherwise, or even

7    a violation of trespassing laws.

8    **220.** I complained to the Judicial Commission in re presiding judge Reilley's assignment

9    of a commissioner after I had not stipulated to it. I sent a cc to Reilley and Wilson/Moore.

10   The Commission thought I was complaining about a commissioner and told me that

11   complaints in re commissioners had to be sent to the presiding judge first.

12   **221.** Presiding Judge Reilley wrote me telling me he wasn't going to read my complaint,

13   and Wilson/Moore write perjorious declarations to the court saying I had not said I did

14   not stipulate to a commissioner.

15   **222.** So I repeated what the Judicial Commission told me to do. This time I included a

16   copy of the transcript of my not having stipulated to the commissioner as well as specific

17   complaints in re Commissioner Gunn. The clerk insisted she would not deliver my letter

18   to Reilley until I insisted and she did so (while communicating to her co-workers by

19   making circular motions over her head in the universal body-language for 'crazy').

20   **223.** I also hurriedly filed a trial issues brief hoping to make record that I at least tried to

21   protect my financial interests in the divorce.

22   **224.** Reilley's actions at TRAC forced me to expend more time and money to file motions

23   asking the court to address the inappropriate assignment of the commissioner. I included

Complaint - Leslie Moore v County of Butte, et al

requests for cooperation and disclosure and a Pitchess Motion for the information City, in violation of the California Public Records Act, was denying me, and which I needed to address the accusations by Moore to the divorce court that I had made false accusation of DV.

**225.** Judge McNelis, though he had previously recused himself, was seated to hear my motions on March 17, 2009.

**226.** He let it be known that he had already decided to deny my motions and that I was not going to be allowed to speak.

**227.** But Wilson was allowed to speak, making false accusations that I had delayed the divorce, and lying to the court by stating that he had been cooperative, though he had communicated with me only once in the 13 months since I filed for divorce (the time I offered Moore everything for the truth), and provided no disclosure I asked for.

**228.** McNelis was not going to allow me to speak to this accusation either, so I begged. I tried to address the delays with the factual evidence that I was responsible for none of them and had in fact made Herculean efforts to overcome the obstacles preventing the divorce from proceeding, but McNelis shut me down.

**229.** And denied all my motions for relief - with prejudice - including the inappropriate assignment of the commissioner.

**230.** It was obvious just by the actions in the last few proceedings, that I didn't stand a chance in this case any more than I had in the others and it having been repeatedly demonstrated that I would not be allowed to speak in court, I was forced to hire yet another attorney and I retained Richard Thomas, on or around March 20, 2009.

**231.** By this time I had become financially exhausted - forced to use all liquid assets on

40

1      legal costs and living expenses, which I had had to reduce by even turning off most of the

2      power in my house and getting free food from local missions, and now, having to hire

3      another attorney forced me to begin borrowing against assets.

4      **232.** Thomas prepared a trial issues brief. I made my corrections. Thomas filed it

5      without the corrections.

6      **233.** At the next court date, 3/25/09, Commissioner Gunn was seated and saw the motion

7      McNelis had denied in re my not stipulating to a commissioner hearing the case, so Gunn

8      refused to hear it - and court was delayed again.

9      **234.** The court used my peremptory challenge to unseat the commissioner though I had

10     not stipulated to a commissioner.

11     **235.** But the delay gave me the opportunity to ask Thomas to do the needed discovery,

12     and I told him to also:  Get my peremptory challenge back in case it needed to be used -

13     especially if 'visiting' Judge Lamb (who had worked nearly full-time and had his own

14     office at BCSC for many years), were to be seated as I suspected he would be; place the

15     transcripts of proceedings into the record; get the information I needed to file my income

16     taxes; get a current house appraisal as the one I had gotten was now over a year old;

17     demand the mediation the court had earlier ordered; investigate a suspicious amendment

18     Moore made to the Medical Trust that appeared to have changed my beneficiary status;

19     check to see whether the beneficiary status of a life insurance policy had been changed as

20     well; and ensure all proceedings were recorded. Thomas did none of these things.

21     **236.** I provided Thomas a list of the discovery I needed. There was still no cooperation

22     from Wilson, so I told Thomas to file a motion to compel it. He did not do this.

23     **237.** I repeatedly explained to Thomas the loss of PERS that was occurring and

41

demanded he bifurcate the divorce and get this one issue moving along.  He did not do this.

238.  Since City was denying me the information the legislature intends I 'shall' be given, I filed a subpoena for it.  City motioned to quash the subpoena.  On 4/7/09 BCSC indicated it was going to uphold the quash.  Bob Fruitman, for Thomas, told the court he would re-file the Pitchess motion.  Though he charged me many hours to do this, it was never done.

239.  At the next hearing on April 13, Thomas delayed the trial because of the frustrations we were facing in getting discovery.  Instead of putting the real reason into the record at court, Thomas told the court the reason was his own calendar, thereby placing into the record the first delay that could be attributed to me.

240.  I told Thomas not to schedule anything between July 1 and 16 due to actions in the appeal in the JV case.  Thomas scheduled a proceeding for July 6 anyway.  He did not inform me prior, attended in my name without me, *and did not have it recorded.*

241.  Thomas told me that what happened that day was all judges finally - 18 months into this divorce - did what should have been done at the outset - they recused themselves due to their relationship with Moore.  Thomas told me that even Lamb had 'bailed' that day for the same reason, and that a different visiting judge would be assigned.

242.  Shortly after this, I received a response to my earlier letter to presiding judge Reilley in re his assignment of the commissioner and my complaint about the commissioner.  He did not address the complaints I made about the Commissioner and, even though the point was moot now because Commissioner Gunn had recused, Reilley admitted that I had clearly not stipulated to a commissioner.  And the letter indicated Reilley had assigned

1   Judge Lamb instead. - this after he had 'bailed'.

2   **243.** I immediately began calling Thomas to make sure he got Lamb off the case and

3   quickly so this case could move on.  Thomas did not return my calls, so I began faxing

4   him.  I got no response.

5   **244.** Moore finally made his first offer on or about August 17, 2009 - 18 months after I

6   filed for divorce.

7   **245.** Thomas noticed Moore's price on the house was far below it's actual value and told

8   me to keep quiet about it because the 'mistake' was in my favor if I got to keep the house.

9   I reminded Thomas that I would not try to second-guess any reasoning Moore might have

10  for making this 'mistake'.  I wanted only a fair division based on factual information.

11  **246.** At negotiations prior to court on August 18th, I told Moore I would buy the house -

12  but at the fair price, at which point Thomas threatened to withdraw.

13  **247.** In court, Lamb was seated.  Thomas did not address my challenge of Lamb, so

14  before any contested testimony was heard by Lamb, I attempted to speak to this, but

15  Lamb did not allow me to because I had an attorney present.

16  **248.** Contested testimony began with Thomas arguing major assets without having

17  allowed me to explain to him the relevant information and provide the documentation I

18  had obtained in re them, so I left the courtroom because it was obvious that my interest in

19  my life was not only irrelevant, it was inhumane to be forced to be present to witness this

20  careless annihilation of my financial life by the court and its officers after they had already

21  carefully annihilated the important things in my life.

22  **249.** After I left:  Halting the proceedings was discussed.; Thomas' withdrawal was

23  discussed;  And I was threatened with sanctions for my 'non-cooperation' with being

harassed, intimidated, threatened, traumatized, tortured, and terrorized - while my health, my family, my name, and my businesses were destroyed, a child I love was inhumanely abused, and I was forced to give my accrued material wealth to attorneys to ruin my financial future - all for having gotten a TRO after I had been assaulted and tied up in the sheets using police tactics because I was non-cooperative with being raped. Anyway, the court discussion in re the three issues noted above took 5 minutes, which is relevant later.

**250.** K.T. called me in the summer of '09 with tears in his voice telling me he missed me. Kim and Mike Lefanto, the people K.T. had been placed with as foster/prospective adoptive parents after his being taken from his family, met me at Wal-Mart so K.T. and I could see each other. CSD had not informed them that I had filed an appeal in an attempt to get firm and legal visitation, so they thought it was Dawn who had filed an appeal. When I told them it was my appeal, they became angry, changed their telephone numbers, and had it arranged that there be no more visits (which I was not informed of) using their unfounded anger at me to hurt K.T. further by denying him visitation with the family he loves and misses.

**251.** In August of 2009, I made one last attempt to offer CPD and BCDA a chance to take the appropriate action in response to my reports of the misconduct in this travesty. I did this in conjunction with a civil protest, asking K.T. 's family and friends to show up in support and bring K.T. a birthday gift. John Carillo of the Chico Police Department again refused to take my reports or complaints but went around and around insisting I was still trying to report the DV - more crazymaking. Carillo told me that the BCDA would not take my reports either. And, Honea of BCDA even told me he 'didn't believe my complaint was about the response, but the DV itself.'

**252.** And a restraining order was issued against me (though I was not informed) for 'threatening to disturb and disrupt K.T. 's peace' though there was no such threat as I had indicated to K.T. 's adoption worker, Levine, that I would go through him to deliver the gifts. Levine claims not to have received this communication from me though I had it stamped as received by his secretary.

**253.** After City, County, State, CPD, BCDA, CSD, BCSC, and officers of the court committed an atrocity against K.T. which completely disturbed and disrupted not only his peace, but his entire life and the lives of his entire family, they then restrained me for offering that K.T. 's adoption worker deliver birthday gifts to him. This was absurd beyond any reasonability. I contested it.

**254.** On 10/13/09, Mosbarger was seated to hear the case (though she had previously recused herself in a related case involving the same parties).

**255.** Mosbarger allowed CSD's attorney Kennedy to bring in issues at conclusive arguments that had not been brought up in testimony or discovery - Kennedy's argument being that I had 'used K.T. to personally embarrass my husband by going to the police department'. This is a good illustration of the difficulties a victim of OIDV faces - she is retaliated against by her abuser for attempting to report the abuse to his 'friends', and then his 'friends' retaliate against her for attempting to report the retaliation by his 'friends' - it's just too crazy to clarify.

**256.** This event brings the case full-circle in that the restraining order I requested on February 27, 2008 was issued as a non-CLETS order when there was an actual threat and the threat is being carried out, while the order issued against me is a CLETS order and there is no threat whatsoever.

45

**257.** In September 2009, CSD filed their response to my appeal. In the meanwhile I had been trying to make this report to the Department of Justice (DOJ). They have to have written documentation that I exhausted all local remedies (CPD and BCDA) before they can look into a case. CPD and BCDA and City have refused to provide their refusals in writing. DOJ literature indicates that I am to by-pass the Grand Jury if the DA is a subject of the complaint, but DOJ's secretary told me I do have to file with the Grand Jury. As when my intellect and instinct advised me not to participate in the CPD IA and BCSC investigation, I knew this was a bad idea, but I was given no choice, so I filed it with the Grand Jury. Unknown to me until later, the Grand Jury is advised by County Council, and attorney K. Merrifield (the wife of one of the two CPD officer's that are the subject of my initial complaint) is on staff at County Council. When I filed my complaint with the Grand Jury, and provided some of my evidence, County Council became aware that I had prima facie documentation of the perjury committed by Lozano and/or Sweet and/or Parra of CSD in re the visits with K.T.'s mother. K. Merrifield and Attorney Bruce Alpert of County Council then covered this up by claiming to the appeal court, and excluding the evidence to the contrary, that I allowed visits *'even after* CSD made it clear that the mother's contact was to be supervised by their agency'.

**258.** They also changed CSD's claim that the DV occurred in the eight weeks prior to K.T. 's detention, to that it occurred in the three weeks prior - though it had occurred nearly four months prior - trying to make it look even worse.

**259.** And there are many other discrepancies in their brief to the appeal court that conflict with facts in the record and that they are aware of, and they continued to exclude the evidence in regard to K.T's dental treatment, but I had become far too exhausted to

+ used my stmt to CSD's fraud against me

46

file a reply and the attorney who filed the initial brief did think it necessary to file a reply.

**260.** Thomas did not show for the hearing in re his withdrawal because he had had a heart attack. His staff had informed Wilson, but not his own client, so more of my time and money was intentionally wasted preparing for and going to court.

**261.** On October 30, 2009, I called Thomas to get my paperwork for the divorce. He refused to give me it to me because I had added his name to this suit (which I had filed after DOJ refused to investigate my complaint), so I withdrew the suit for this reason.

**262.** At the next court date in re the divorce, on 11/10/09, Lamb was seated. Wilson asked to open with a 'back-room' as usual. I will summarize a few of the violations in Judge Lamb's court that occurred in the rest of the divorce at the end of this complaint, but I can't give exact details until I amend the complaint because Lamb indicated he has up to 90 days to send me the final tally of how much of my property State, at the hands of BCSC judges, was dissipated and deprived of me and given to Moore. But primarily, the reason I am unable to add this stuff to the complaint right now is that I was re-traumatized when:

**263.** I learned that, in December of '09, the Lefanto's decided they did not want K.T. and that he had lost another 'home' and 'family', was placed in a different temporary foster home, and slated to be removed from his town, school, teachers, and friends within the week.

**264.** I could not bear the thought of K.T. losing everything yet again, so I filed a request with BCSC begging them to intervene with his losing even his relationships with his teachers and friends. Mosbarger responded by telling me there was 'no change of circumstances', indicating to me that BCSC doesn't consider K.T. to be a party to his life

1    any more than his family of origin was as this is a HUGE change of circumstances - to

2    K.T.

3    **265.** So I filed the same request asking the court of appeal to intervene in this impending

4    harm to K.T. They told me I was not aggrieved because I was not a party to K.T.'s life.

5    **266.** But I was terribly grieved. I had spent years carefully establishing K.T.'s trust and

6    belief and knowing that he is precious and valuable - though his own mother had given

7    him away - and then CSD and BCSC, by not allowing any contact after they ripped him

8    from his home and family, led K.T. to believe his family didn't even care enough about

9    him to even call him - and here he was - dumped again. And, based on the perjury,

10   perjury, perjury, perjury, perjury and more perjury, the intentional exclusion of

11   exculpatory evidence, fraud, threats, and violations of my civil rights etc, the State was

12   firm in their decision that it was not in K.T.'s best interest to have a family that actually

13   loves him - dearly - and took excellent care of him, so . . .

14   **267.** I tried again to report the crimes that resulted in the original carelessness with his life

15   by filing a writ of mandamus - that the continued prevention of a victim from reporting

16   that victimization to any judge would be halted - and another request for hearing with the

17   Juvenile court based on new (the) evidence - that this, though a complicated case of

18   conspiracy, was child abuse - plain and simple. I have not gotten a response to either

19   filing.

20   **268.** Reconstructing the trauma story is an *essential* step in recovery, but, in addition to

21   the trauma, and resulting great bodily injury, inflicted on me by the individuals and

22   agencies as complained of herein, they are also preventing me from having the information

23   I need to recover in that:

Complaint - Leslie Moore v County of Butte, et al

48

1    **269.** Since BCSC declared that I was not a part of K.T.'s life or a party to the case

2    against me as 'defendant', the court records are denied me.   CSD and Meadowsong

3    fraudulently told me I would not even be allowed to see the investigation of their

4    accusations and convictions against me.  After much research, I was able to show CSD

5    that I do get to view the investigation whereupon I discovered, among other things, that

6    CSD had witnessed the portion of BCDA's taped interview that BCDA destroyed, and

7    filed a false date with State to cover for the initial 'professional courtesy', and claimed that

8    I made statements to Sweet's investigation, though I have never even met her.

9    **270.** A 'normal' victim of DV gets the information in the police investigation - including

10    statements of all witnesses and involved parties - free of charge and by simply asking for

11    it.  But because CPD investigated my report as an IA, I could not get it this way.  The

12    legislature provides that I do get this information, and my original statement to it, even

13    though it is an IA, but Alicia Rock, and Lori Barker, and Roger Wilson, attorneys for the

14    City of Chico, and MacPhail, and Maloney,  and Dye, and O'Brien, and Carrillo of CPD,

15    and BCSC have all repeatedly refused to give it to me.  But CPD did give me what they

16    are trying to say is my original statement to it - the one I gave to BCDA two months after

17    my original statement to CPD.

18    **271.** Osborne refused to give me my own medical records until I contacted the Board of

19    Behavioral Sciences.  When I finally got the records, I discovered her ineptitude in re DV,

20    her misdiagnosis, her interference with the investigations and court case in direct

21    opposition with our contractual agreement (which she says she can't find), and that CPD

22    had tried to obtain confidential medical information from her following their shenanigans

23    in re the truck burg on my property and the TRO violations.

49

272. BCDA claims to have conducted a 'regular' criminal investigation into the DV, however, notwithstanding the fact that the intent of a 'regular' investigation would have been to dis-cover the truth instead of to cover it up, the investigation is not available as a 'regular' one would be due to it's 'sensitivity'. I have had to work very hard to get even the information I have and got the proof that Moore had not only committed more perjury, he had made an even worse false accusation against me: That HE was the victim of DV at my hands - that he 'took me by the arms and shoved me once in self-defense' in the incident wherein Moore held me by the throat and bashed my head against the wall repeatedly - which the crime scene clearly illustrates. The report also shows that in fact West's intentional exclusion of this and other exculpatory evidence, excusing Moore's perjury, etc. had been used to turn this around on me. Among the evidence of further nefarious acts on the part of CPD and BCDA, many things in West's narrative report of his investigation conflict with the evidence he had, and he blatantly perverts his mandated duty to identify the 'primary' (meaning the dominant, not the first) aggressor, by declaring me the 'primary' because I 'initiated' the event. He also convicts me of being 'in-credible' though I cannot be impeached while Moore's very short declaration to the BCDA investigation contains at least five statements that impeach him based on his own statements to the investigation, evidence they do admit having, and the evidence they refused. In addition, the statements by Merrifield and MacPhail made to the investigations indicate their perjury, as well as Moore's own indications admitting the rapes.

273. In comparison to the non-financial devastation caused by this retaliation vendetta/silencing campaign, the divorce issues are minor, but they exemplify a complete and utter disregard of my Constitutional right to equal protection of the laws, and not to

1    be deprived of my property without due process, and numerous California statutes, so I

2    will provide a few examples of how the end of the divorce 'trial' played out ...

3    274. Prior to trial I motioned for enough temporary spousal support to live on, legal

4    costs, sanctions for the malicious proceedings and intentional financial exhaustion and

5    non-disclosure of assets, a judge who hadn't recused, and the like.  I filed scads of

6    documentation and a very long and detailed written declaration in support.  Wilson filed a

7    declaration that I failed to provide documentation and declaration in support of my my

8    motion.  They were not addressed and/or were denied.  So I was made to go into a trial

9    without discovery, without enough money to live on let alone hire expert witnesses or an

10   attorney, and after I had been disabled and utterly exhausted physically, emotionally and

11   financially.

12   275.  After being told by Lamb, 'You don't expect me to hold you to a different standard

13   than an attorney, do you?',  he opened the case with case management, which was actually

14   'Leslie management'.  He  explained to me that, since it had already been decided that

15   since Social Security declared me disabled, Moore had agreed that my working would not

16   be an issue in re spousal support.  He confirms with Wilson that this had been discussed

17   and decided.  So I asked Lamb, 'Since there is nothing in the record about my being

18   disabled by Social Security and it was never discussed in court, when was this discussed

19   and decided?'  No answer.

20   276.  Lamb then declared that he had calculated that I would be owing Moore about

21   100,000 in the settlement and he confirmed this with Wilson.  Lamb condescendingly

22   asked me 'how could I possibly afford that?'  I asked if the intent was to leave me

23   homeless because if I could not afford payments on a 100,000 loan, I surely couldn't

afford to even rent housing. My being left homeless in comparison to Moore's declaration

that he needed a 450,000 house didn't seem to be an issue to Lamb, but I went on: I told

Lamb that Moore would actually owe me money in the settlement because of the three

largest assets in Moore's column. Lamb was confused - unaware of these assets. Again I

wondered out loud - if he was not aware of them he had obviously only looked at Moore's

declarations in his calculating this case because, though Moore had excluded these assets

in his declarations, I had indicated them in mine. Lamb checked with Wilson and Moore

who reaffirmed they were unaware of these assets as well. So I held out documentation

that they do in fact exist and are very valuable and said that, since they were intentionally

not disclosed by Moore, and he had indicated in court they did not exist, Moore could not

testify about them and that they had to be awarded to me 100% plus legal cost to discover

and document. At that point Moore/Wilson admitted their existence. (Later Moore was

not only allowed to testify about them at trial though they were not in his trial issues, he

was allowed to testify *as an expert witness*, though he had an interest in the outcome, and

without producing documentation, while I was not allowed to testify to them, although

they were in my trial issues, and I was not even allowed to place the documentation into

the record as exhibits.)

**277.** After this case management session, and my learning of the ex parte goings-on, at a

TRAC with Reilley, I told him of them and reminded him that Lamb had no business

hearing the case. Reilley told me he couldn't address these issues because he was recused.

So I reminded him that all decisions in my cases were made by recused judges and would

he please address it so we could move along properly. He refused.

**278.** My exposure in court of the fact that there is evidence of ex parte discussions and



1   decisions led to - - - At a negotiation meeting shortly after this after Wilson informed me
2   the court had already decided a few of the issues I wanted to discuss, so I asked him when
3   these decisions had been made. Wilson's answer, 'After you left court on August 19'
4   indicates that this is the cover-up for the ex parte meetings. I have learned that at least
5   five major decisions were supposedly made in that 5 minute time period along with the
6   three other decisions the record indicates were made at that time. (The clerk didn't record
7   the other five of course - because they didn't happen then - they happened ex parte.)
8   **279.** When trial began on or about February 18, Lamb confirmed with Wilson something
9   or other that had been decided February 1st. So I asked why I had not been informed of or
10  invited to any proceeding on February 1st. This question was quickly diverted by both
11  Wilson and Lamb.

12  **280.** Lamb even gave Moore my place as petitioner in the 'trial' saying, 'He gets the
13  advantage because he has an attorney.' Because I couldn't afford any expert witnesses, I
14  was not allowed input at trial, so I impeached the 'expert' that was present. This was
15  objected to/sustained/stricken.

16  **281.** In the one hour I was allotted to make my final argument - I got in about five
17  minutes in which everything relevant I tried to present was objected to, sustained, and
18  stricken, until I finally gave up and asked could I please just go and be left alone? No.
19  **282.** Oh, I did get some of the Community Property - a 350/month Community obligation
20  - but I didn't get it for free - I had to pay Moore 200/mo for my doing the labor associated
21  with it and for my taking responsibility for the expense - so it cost me 550/mo., I had to do
22  the labor, and Moore made 200/mo on this obligation, and if that makes sense, it will
23  likely make sense that,

Complaint - Leslie Moore v County of Butte, et al

**283.** Though the disparity of income of the parties is nearly one quarter of a million in the two years since separation (Moore's favor of course), and Moore had the free assistance of at least three attorneys (police union, BCDA, and Medical Trust), and Wilson (who violated numerous sections of the Rules of Professional Conduct) I was ordered to pay my own legal costs, which were astronomical.

**284.** I can't go on. This is too depressing and it's only an outline of 'just the facts' in a DV, JV, and Divorce case in which BCSC and officers of the court deprived a woman of her safety, her child, and her property without due process. It ended up COSTING me 50,000.00 more than the value of my 50% of the 450,00.00 estate to get my 50%, and the secure financial future that I had already established was given to Moore though he told the judge he intended to give it away or lose it. So I lost more than the value of my entire accrued material wealth and the secure financial future I had established was turned into one of struggling to stay afloat while Moore swims away in luxury, leaving in the aftermath precisely what he predicted, proving 'he can do anything he wants and get away with it because he is a cop.' And so can his 'friends'.

# VII

## CAUSES OF ACTION

**285.** The allegations I set forth in my complaint hereinabove set forth Causes of Action for acts/omissions by defendants and co-defendants named in my complaint hereinabove, acting Under Color of Law, and/or under license and/or regulation of State, which acts/omissions were the cause of the damages I suffered and will continue to suffer.

**286.** I contend, as detailed and set forth in my complaint hereinabove, that the actions of defendants individually, as well as the actions collectively, were malicious and oppressive, undertaken with intent and/or reckless disregard that I would suffer injury, and as such were actions deserving of an award of punitive damages against defendants.

**287.** I contend that the actions of defendants not only violated my civil rights, but that many of the actions of defendants were actual crimes and/or failures to perform duties which are non-discretionary by legislative and/or regulatory mandate and/or were violations of Standards of Practice and/or Rules of Conduct, as set forth in my complaint hereinabove which establishes cause for the following actions:

## FIRST CAUSE OF ACTION - CIVIL RIGHTS

**288.** Violation of my rights under the 14th amendment to the Constitution of the United States to equal protection of the laws, by City and CPD and CSD, and the involved employees/officers/agents of these governmental agencies as named and identified in my complaint hereinabove, and as accomplished through that which is detailed in my complaint hereinabove, in regard to the 'professional courtesy' and no monthly visits by

1    CSD when they became involved in this case on or about 9/13/07.

2

3                    SECOND CAUSE OF ACTION - CIVIL RIGHTS

4    **289.** Violation of my rights under the 14th amendment to the Constitution of the United

5    States to equal protection of the laws, by City and CPD, and the involved

6    employees/officers/agents of these governmental agencies as named and identified in my

7    complaint hereinabove, and as accomplished through that which is detailed in my

8    complaint hereinabove, in regard to the police response to my request for assistance in my

9    situation involving domestic violence on or about 1/22/08.

10

11                    THIRD CAUSE OF ACTION - CIVIL RIGHTS

12    **290.** Violation of my rights under the 14th amendment to the Constitution of the United

13    States to equal protection of the laws, by BCSC, County and/or State, and the involved

14    employees/officers/agents of these governmental agencies as named and identified in my

15    complaint hereinabove, and/or Woodward and/or Wilson and/or Moore, and as

16    accomplished through that which is detailed in my complaint hereinabove, in regard to the

17    protection of Moore's job instead of his victim's safety on 2/27/08 and 3/25/08.

18

19                    FOURTH CAUSE OF ACTION - BREACH OF CONTRACT

20    **291.** Anne Osborne, MFCC, as accomplished through that which is detailed in my

21    complaint hereinabove, in regard to her communications with employees of City at CPD

22    and/or County at BCDA, and attorney Woodward, violated the restrictions by contractual

23    agreement between myself and Osborn.

Complaint - Leslie Moore v County of Butte, et al



1

## FIFTH CAUSE OF ACTION - CIVIL RIGHTS

2     **292.** Violation of my rights under the 14th amendment to the Constitution of the United

3     States to equal protection of the laws, by City, County, State, CPD, BCDA, DOJ, and the

4     involved employees/officers/agents of these governmental agencies as named and

5     identified in my complaint hereinabove, and as accomplished through that which is detailed

6     in my complaint hereinabove, in regard to refusing to take my reports of crimes committed

7     in the retaliation and silencing that followed my attempt to gain safety and freedom for

8     K.T. and myself.

9

10

## SIXTH CAUSE OF ACTION - CIVIL RIGHTS

11    **292.** Violation of my rights under the 14th amendment to the Constitution of the United

12    States to equal protection of the laws, by City, County, CPD, BCDA, and the involved

13    employees/officers/agents of these governmental agencies as named and identified in my

14    complaint hereinabove, and as accomplished through that which is detailed in my

15    complaint hereinabove, in regard to harassing me to participate in investigations, and then

16    threatening to turn it around on me if I did participate, and for actually turning it around

17    on me falsely, and for the criminal and civil violations named individuals committed in

18    relation to these investigations.

19

20

## SEVENTH CAUSE OF ACTION - FRAUD

21    **293.** Rick West of BCDA, as accomplished through that which is detailed in my

22    complaint hereinabove used a fraudulent threat that 'K.T. would be placed on the stand

23    and ripped to shreds and traumatized' in his effort to silence me and stop me from

1    protecting myself from the false accusations of Moore, and/or Merrifield and MacPhail for

2    telling me that my 'domestic violence is none of their business.'

3

4                    EIGHTH CAUSE OF ACTION - BREACH OF CONTRACT

5    **294.** County and/or State, CSD, and the involved employees/officers/agents of these

6    governmental agencies as named and identified in my complaint hereinabove, and as

7    accomplished through that which is detailed in my complaint hereinabove, breached the

8    contract between myself and County and/or State and CSD in regard to their obligation to

9    visit K.T. one time per month, to assist in the visitations with his mother, to monitor the

10   health care I provided to K.T., and to provide me 7-day written notification prior to

11   removing K.T. from my care in the absence of any immanent risk of serious bodily injury.

12

13                    NINTH CAUSE OF ACTION - CIVIL RIGHTS

14   **295.** Violation of my rights under the 4th and/or 5th and/or 14th amendment to the

15   Constitution of the United States to rights of familial association, by City, County and/or

16   State, CPD, CSD, and/or BCDA, and the involved employees/officers/agents of these

17   governmental agencies as named and identified in my complaint hereinabove, and as

18   accomplished through that which is detailed in my complaint hereinabove, in regard to the

19   warrantless removal of K.T. in the absence of any immanent risk of serious bodily injury.

20

21                    TENTH CAUSE OF ACTION - CIVIL RIGHTS

22   **296.** Violation of my rights under the 4th and/or 5th and/or 14th amendment to the

23   Constitution of the United States to rights of familial association, by County and/or State,

1    CSD and/or BCSC, and the involved employees/officers/agents of these governmental

2    agencies as named and identified in my complaint hereinabove, and/or David Kennedy

3    and/or Amy King and/or Tamara Solano and/or Larry Levine and or Martin McHugh, and

4    as accomplished through that which is detailed in my complaint hereinabove, in regard to

5    the continued detention of K.T. in the absence of any immanent risk of serious bodily

6    injury.

7

8                       ELEVENTH CAUSE OF ACTION - CIVIL RIGHTS

9    **297.**  Violation of my rights under the 14th amendment to the Constitution of the United

10   States to due process as outlined in the sixth amendment:  That I be informed of the nature

11   and cause of an accusation; to be confronted with the witnesses against me; to have a

12   compulsory process for obtaining witnesses in my favor; and to have the assistance of

13   counsel, by County and/or State and BCSC and/or CSD, and the involved

14   employees/officers/agents of these governmental agencies as named and identified in my

15   complaint hereinabove, and as accomplished through that which is detailed in my

16   complaint hereinabove, in regard to the child abuse/neglect accusations made against me in

17   BCSC.

18

19                       TWELFTH CAUSE OF ACTION - FRAUD

20   **298.**  County and/or State and CSD, and the involved employees/officers/agents of these

21   governmental agencies as named and identified in my complaint hereinabove, and as

22   accomplished through that which is detailed in my complaint hereinabove, in regard to

23   telling me 'they can't leave a child in a home where there was ever domestic violence,

1    committed fraud.

2

3                    THIRTEENTH CAUSE OF ACTION - CIVIL RIGHTS

4    **299.** Violation of my rights under the 8th amendment to the Constitution of the United

5    States that I not be subjected to cruel and unusual punishment, by City, County and/or

6    State and CSD and CPD and BCSC, and the involved employees/officers/agents of these

7    governmental agencies as named and identified in my complaint hereinabove, and as

8    accomplished through that which is detailed in my complaint hereinabove, in regard to

9    issuing sentence upon me, for the false accusations made against me, to be traumatized (by

10   the sudden removal of K.T.) and tortured (being in essence, bound and gagged while a

11   child I love was being hurt), and to inflict great bodily injury upon me (**PTSD**).

12

13                   FOURTEENTH CAUSE OF ACTION - CIVIL RIGHTS

14   **300.** Violation of my Civil Rights under the 14th amendment to the Constitution of the

15   United States to equal protection of the laws, by County and/or State and CSD, and the

16   involved employees/officers/agents of these governmental agencies as named and

17   identified in my complaint hereinabove, and as accomplished through that which is detailed

18   in my complaint hereinabove, in regard to the child abuse investigation conducted against

19   me.

20

21                   FIFTEENTH CAUSE OF ACTION - DEFAMATION

22   **301.** City, County and/or State, CPD, BCDA and/or CSD, and the involved

23   employees/officers/agents of these governmental agencies as named and identified in my

                     Complaint - Leslie Moore v County of Butte, et al

complaint hereinabove, and as accomplished through that which is detailed in my complaint hereinabove, committed defamation in regard to specific and overall actions taken by defendants to discredit me in order to silence me, and by making and perpetuating false statements that I had mental issues and/or that I was a liar.

## SIXTEENTH CAUSE OF ACTION - CIVIL RIGHTS

302. Violation of my rights under the 14th amendment to the Constitution of the United States to equal protection of the laws, by City and CPD, and the involved employees/officers/agents of these governmental agencies as named and identified in my complaint hereinabove, and as accomplished through that which is detailed in my complaint hereinabove, in regard to the truck burglary that occurred on my property on or about 10/23/08, in which no report was taken and I was left to confront the burglar on my own.

## SEVENTEENTH CAUSE OF ACTION - CIVIL RIGHTS

303. Violation of my rights under the 14th amendment to the Constitution of the United States to equal protection of the laws, by City, County and/or State, CPD, BCSC, BCDA, and the involved employees/officers/agents of these governmental agencies as named and identified in my complaint hereinabove, and/or Driscoll, and/or Wilson, and/or Moore, and as accomplished through that which is detailed in my complaint hereinabove, in regard to the TRO violations and trespassing.

1

## EIGHTEENTH CAUSE OF ACTION - CIVIL RIGHTS

2     **304.** Violation of my rights under the 14th amendment to the Constitution of the United

3     States to equal protection of the laws, by City, County and/or State, CPD, BCSC, BCDA,

4     DOJ, and the involved employees/officers/agents of these governmental agencies as named

5     and identified in my complaint hereinabove, and as accomplished through that which is

6     detailed in my complaint hereinabove, in regard to preventing me from reporting

7     victimization to any law enforcement or judge.

8

## NINTEENTH CAUSE OF ACTION - CIVIL RIGHTS

9

10     **305.** Violation of my rights under the 14th amendment to the Constitution of the United

11     States to equal protection of the laws, by City, County and/or State, CPD, BCSC, BCDA,

12     CSD and the involved employees/officers/agents of these governmental agencies as named

13     and identified in my complaint hereinabove, and as accomplished through that which is

14     detailed in my complaint hereinabove, in regard to their numerous failures to perform

15     duties mandated by statutes and/or regulations intended to protect me from the kind of

16     injury I sustained.

17

## TWENTIETH CAUSE OF ACTION - CIVIL RIGHTS

18

19     **306.** Violation of my rights under the 14th amendment to the Constitution of the United

20     States to equal protection of the laws, by City, County and/or State, CPD, BCSC, BCDA,

21     CSD, and the involved employees/officers/agents of these governmental agencies as

22     named and identified in my complaint hereinabove, and as accomplished through that

23     which is detailed in my complaint hereinabove, in regard to the numerous instances of

1    perverting and obstructing justice.

2

3    ### TWENTY-FIRST CAUSE OF ACTION - CIVIL RIGHTS

4    **307.** Violation of my rights under the 14th amendment to the Constitution of the United

5    States to equal protection of the laws, by City, County and/or State, CPD, BCDA, CSD,

6    and the involved employees/officers/agents of these governmental agencies as named and

7    identified in my complaint hereinabove, and as accomplished through that which is detailed

8    in my complaint hereinabove, in regard to the CPD Internal Affairs Investigation, BCDA

9    investigation, and CSD investigation, which were conducted and concluded for the

10   wrongful purpose of protecting Moore's reputation and/or silencing me and/or retaliating

11   against me for having made a complaint against a police officer.

12

13   ### TWENTY-SECOND CAUSE OF ACTION - CIVIL RIGHTS

14   **308.** Violation of the 9th and/or 10th amendments to the Constitution of the United States

15   which retain and/or reserve certain rights to the people, by City, County, BCSO, CPD,

16   and the involved employees/officers/agents of these governmental agencies as named and

17   identified in my complaint hereinabove, and as accomplished through that which is detailed

18   in my complaint hereinabove, in regard to preventing me from making a citizen's arrest in

19   regard to the DV itself and/or the TRO violations and trespass.

20

21   ### TWENTY-THIRD CAUSE OF ACTION - CIVIL RIGHTS

22   **309.** Violation of my rights under the 2nd amendment to the Constitution of the United

23   States to keep and bear arms, by County and/or State, CSD, BCSC, and the involved

63

1   employees/officers/agents of these governmental agencies as named and identified in my

2   complaint hereinabove, and as accomplished through that which is detailed in my

3   complaint hereinabove, in regard to, and as a result of, the unnecessary and ridiculous

4   restraining order issued against me.

5

6   **TWENTY-FOURTH CAUSE OF ACTION - PUBLIC RECORDS ACT VIOLATION**

7   **310.** City, County and/or State, CPD, BCSC, CSD and the involved

8   employees/officers/agents of these governmental agencies, as named and identified in my

9   complaint hereinabove, and as accomplished through that which is detailed in my

10  complaint hereinabove, violated my right to the information contained in investigations

11  involving myself and/or violated the California Public Records Act in denying me the

12  information the legislature intends I shall be given in relation to the investigations.

13

14  **TWENTY-FIFTH CAUSE OF ACTION - CIVIL RIGHTS**

15  **311.** Violation of my rights under the 14th and/or 5th and/or 6th and/or 7th amendments to

16  the Constitution of the United States to protection from being deprived of my property

17  without due process, by County and/or State, BCSC, and the involved

18  employees/officers/agents of these governmental agencies as named and identified in my

19  complaint hereinabove, and/or Wilson and/or Driscoll and/or Thomas, and as

20  accomplished through that which is detailed in my complaint hereinabove, in regard my

21  being deprived of my accrued material wealth and future financial security through denial

22  of due process and equal protection of the laws, to a trial by jury in a common law case

23  where the value in controversy is over 20.00, and to know the cause of an accusation

64

against me and to present evidence in my favor, and as accomplished through that which is detailed in my complaint including such acts as ex parte proceedings, denial of discovery, denial of a satisfactory opportunity to present my case and the totality of the circumstances, failure to perform mandatory duties, driving up the cost of litigation, giving the opposition undue and improper advantage and assumed credibility, allowing perjury and false accusations to be made against me with no factual evidence presented and to which I was not allowed to respond or present factual evidence, violations of California Rules of Professional Conduct, intentional exhaustion, delays, frustrations, non-cooperation, non-disclosure, obstruction of justice in denying me access to the public record and disallowing/ignoring my pleas for assistance in ending the above.

## TWENTY- SIXTH CAUSE OF ACTION
## PROFESSIONAL NEGILEGENCE -  MEDICAL

**312.**  Anne Osborne, MFCC, as accomplished through that which is detailed in my complaint hereinabove, failed to use the skill and standard of care of a medical professional in regard to her undisclosed conflict of interest, violation of our contractual agreements, her insistence that I ignore my own intelligence and instinct in regard to the CPD and BCDA investigations, her misdiagnosis of my condition, her refusal to provide me with my medical records, and her possibly influencing the investigations.

## TWENTY-SEVENTH CAUSE OF ACTION
## PROFESSIONAL NEGLIGENCE - NON-MEDICAL

**313.**  Alicia Rock and/or Lori Barker and/or Roger Wilson and/or Kimberly Merrifield

1

and/or Bruce Alpert and/or Amy King and/or Tamara Solano and/or David Kennedy

2

and/or Elisabeth Woodward and/or Martin McHugh and/or Alfred Driscoll and/or Richard

3

Thomas and Gary Wilson, attorneys at law/officers of the court, as accomplished through

4

that which is detailed in my complaint hereinabove, not only failed to use the skill and

5

standard of care of their profession but violated statutory and/or regulatory mandates

6

and/or the Rules of Professional Conduct, and, in some cases, committed actual crimes.

7

8

## TWENTY-EIGHTH CAUSE OF ACTION

9

### CIVIL RIGHTS - DISCRIMINATION

10

**314.** City, County and/or State, CPD, BCDA, BCSC, CSD, and the involved

11

employees/officers/agents of these governmental agencies as named and identified in my

12

complaint hereinabove, and as accomplished through that which is detailed in my

13

complaint hereinabove, violated my right to be free of discrimination based on religion

14

and/or disability and/or political affiliation.

15

16

## TWENTY - NINTH CAUSE OF ACTION - CIVIL RIGHTS

17

**315.** City, County and/or State, CPD, BCDA, BCSC, CSD, and the involved

18

employees/officers/agents of these governmental agencies as named and identified in my

19

complaint hereinabove, and as accomplished through that which is detailed in my

20

complaint hereinabove, violated my right as a citizen to expect legislative mandates be

21

upheld by those charged with upholding them, to be free of terrorism and crimes

22

committed against me under color of law and/or under the guise of a perceived disability.

23

Complaint - Leslie Moore v County of Butte, et al

## THIRTIETH CAUSE OF ACTION - CIVIL RIGHTS

**316.**   City, County and/or State, CPD, BCDA, CSD, BCSC, and the involved employees/officers/agents of these governmental agencies as named and identified in my complaint hereinabove, and as accomplished through that which is detailed in my complaint hereinabove, violated the underlying and basic right afforded to me under the Constitution of the United States to BE LEFT ALONE, and to pursue happiness as under the first amendment to the Constitution of the United States, and to freedom of speech, even in the courts, wherein a citizen not only has the right to, but is sworn to, tell the truth, the whole truth, and nothing but, while defendants were not only allowed to speak, but allowed to speak hearsay and false accusations and perjury, which I was prevented from speaking in response to.

## THIRTY-FIRST CAUSE OF ACTION - DOMESTIC VIOLENCE
## AND THIRD PARTY DOMESTIC VIOLENCE

**317.**   As to the abuse I attempted to escape and the resulting abuse of power which violated human civility, human rights, and human decency.


## VIII

## DAMAGES

**318.**   As detailed hereinabove, my attempt to escape the abuse of one person resulted in the abuse of power by many.  The actions of defendant individuals and institutions in this case qualifies them, under United States and California law, as a violent terrorist gang, which crime is enhanced by the fact that it was committed under color of law, and

67

enhanced further by the fact that some were committed under pretense of a *perceived* disability, which makes them, under United States and California law, hate crimes as well - crimes that *actually* disabled me - adding aggravated mayhem to the list of crimes. But the worst part of is that they committed these acts against a woman they knew was innocent of the false accusations but, because I am the wife of a police officer, my innocence was not a factor to consider, and a precious child was considered nothing but a pawn.

319. Domestic violence is about power and control. In addition to the crimes defendants committed, this gang exerted absolute power and control over my life, essentially excluding me and my interests in the DV case, the case involving my child, the case wherein I was the defendant, the case wherein I was the victim of crime, and even the case to decide my financial life. In addition, the domestic violence tactic of 'crazy-making' is woven throughout this case. It is a case of domestic violence - by my government - which acts caused me to suffer, and will continue to cause me to suffer:

- Fear, helplessness and hopelessness in having those charged with protecting citizens from crime instead commit crimes to protect the perpetrators of them, and in so doing, committed child abuse of an inhumane nature, and

- Severe Emotional Distress, and

- Great bodily injury, and

- Grief over the loss of K.T., and

- Anguish over K.T.'s loss of his family and future, and

- Grief over the loss of my health, and

- Grief over the loss of my businesses and ability to be a contributing member of society,

- Dissipation and deprivation of my accrued material wealth and future financial security, and

- Loss of trust in both god and government, and

- Anger and dismay over the fact that my community is so oppressed and intimidated by law enforcement, criminal justice, and child protective services in Butte County that they expect and fear retaliation if they stand against corruptions within these agencies, thereby creating a community in which this sort of atrocity is stood for;  And, knowing that with each case like this that the community does not stand against, those in power perceive their license to abuse this power to commit atrocities such as this is validated.

**320.** In addition, I suffered the waste of two years (plus however long this case takes) of my time and energy - resources that should have been devoted to the pursuit of happiness. And my time, money, and energy is even diverted from recovering from the damages by the ongoing nature of this case and the denial of the information in the investigations.

**321.** Damages also include legal costs that were astronomical and the loss of my future earning capacity and future increased medical costs.


# IX

## PRAYER FOR RELIEF


**322.** I, the plaintiff, pray for the following Declaratory/Injunctive relief:

- That the law enforcement and criminal justice community in Butte County be educated in re their obligation and duty to require evidence of accusations and to allow the accused to know the nature and cause of accusations, face their accusers, and present

1    factual evidence, and

2    • That the law enforcement and criminal justice community in Butte County be educated

3    in re their obligation and duty to consider the child in a case involving a child, and

4    • The institution and implementation by every law enforcement agency in Butte County

5    of OIDV polices modeled by the IACP and/or the CJPP under VAWA in order to

6    reduce the possibility of others suffering victimization such as I suffered and to reduce

7    liability and thereby the loss of community money which could/would/should be

8    otherwise better spent, and

9    • The institution and implementation of policies by defendant agencies that will ensure

10   that no criminal or civil case involving a police officer should be handled by local law

11   enforcement or in the local courts which are his second home populated by the family

12   of law enforcement and criminal justice he is a member of, and

13   • That BCSC and officers of the court/attorneys be educated in regard to ex parte

14   discussions/decisions, and

15   • That BCSC and officers of the court/attorneys be educated in regard to DV and the

16   typical behavior of the victim which is non-testimonial evidence of his/her being the

17   victim, and the Standards outlined by the State Bar and American Judges Federation

18   as to the treatment of the victim by the court and it's officers, and

19   • That the law enforcement and criminal justice system in Butte County be educated in

20   regard to the fact that those in power have the propensity and purpose to take

21   advantage of the assumed credibility their position affords them if they are involved in

22   criminal or civil actions.

23   **323.** In addition to the above Declaratory/Injunctive relief, I pray for monetary relief as

Complaint - Leslie Moore v County of Butte, et al

70

follows:

- My half of the accrued material wealth and established future financial security restored to me, and

- Funds to restore my property to its condition prior to my being diverted from maintaining my property because of the intensity and duration of this travesty, and

- Funds to take a break/vacation in order to start my recovery on the right foot after this two-year period without a break to the extent I was even prevented from eating, sleeping, and exercising properly, and

- Reimbursement of legal and travel costs, and  medical costs

- To be provided health insurance for life by defendant City of Chico as their actions/inactions initiated this travesty.

**324.** In addition, in order that I may be afforded the chance to recover to some degree, I pray for the discovery I need in order to reconstruct the trauma story.  For this I need the following:

- The complete IA done by CPD, including my original taped statement and all investigative materials, and

- The complete criminal investigation done by the BCDA and all investigative materials, and

- The compete investigation done by CSD and all investigative materials, and

- Records of all contacts with CPD, BCDA, CPS, BCSO and BCSC, DOJ, and the content and disposition of each, and

- The complete CSD case file on K.T., and

- The complete BCSC case files in re K.T.

**325.** In addition, and most importantly, I pray that K.T. be returned to his home and family. The Constitution protects my human rights. Rights and responsibilities naturally go hand-in-hand, so it naturally also protects my responsibilities. I accepted responsibility for an orphan and took excellent care of him. The state had no right or reason to interfere with this. K.T. has a right to the love he has in his family of origin. We have a right to the love he has for us. And we all have a right to the truth of how this travesty happened and why it is being allowed to take years to undo while the love - the bond K.T. had with his family of origin - grows weaker each day.

**326.** And I pray the court would order exemplary damages as it sees fit and in an amount sufficient to:

- Discourage the type of behavior herein detailed, and
- To allow me to recover, reestablish my gardening business, and retrain for new businesses to replace those completely destroyed in this travesty, and
- To provide me the means to establish and/or encourage education, research and community services for victims of OIDV, child abuse, legal abuse, and the all-too-common resulting PTSD, and
- To provide me the means to provide for my posterity.

ask if any assistance available for disabled to help me understand + get thru this case. Tdx

**JURY TRIAL DEMANDED**

Date 3-26-2010   Signed *Leslie*

**Leslie Moore, sui juris, in pro se**

Complaint - Leslie Moore v County of Butte, et al

72