1
2
3
4
5
6
7

8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11  LESLIE MOORE,                          No. CIV S-10-0713-KJM-CMK

12          Plaintiff,

13      vs.                                FINDINGS AND RECOMMENDATIONS

14  COUNTY OF BUTTE, et al.,

15          Defendants.

16  _____/

17          Plaintiff, who is proceeding pro se, brings this civil rights complaint.  Pending

18  before the court is plaintiff's first amended complaint (Doc. 6).

19          The court is required to screen complaints brought by prisoners seeking relief

20  against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21  § 1915A(a).  The court is also required to screen complaints brought by litigants who have been

22  granted leave to proceed in forma pauperis.  See 28 U.S.C. § 1915(e)(2).  Under these screening

23  provisions, the court must dismiss a complaint or portion thereof if it: (1) is frivolous or

24  malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

25  from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(A), (B) and

26  1915A(b)(1), (2).  Moreover, pursuant to Federal Rule of Civil Procedure 12(h), this court must

1

1  dismiss an action "[w]henever it appears . . . that the court lacks jurisdiction of the subject

2  matter . . . ."  Because plaintiff, who is not a prisoner, has been granted leave to proceed in forma

3  pauperis, the court will screen the complaint pursuant to § 1915(e)(2).  Pursuant to Rule 12(h),

4  the court will also consider as a threshold matter whether it has subject-matter jurisdiction.

5

6                          **I.  PLAINTIFF'S ALLEGATIONS**[1]

7          Plaintiff names the following as defendants:

8  Government Entities  County of Butte, City of Chico, State of California, Butte
                        County District Attorney's Office, Butte County Superior
9                       Court, Butte County Children's Services Division of the
                        Department of Health and Human Services, Chico Police
10                      Department, Butte County Sheriff's Office.

11 Individuals          Terry Moore, Robert Merrifield, Loretta MacPhail, Bruce
                        Hagerty, John Rucker, Michael O'Brien, Michael Maloney,
12                      Michael Webber, Daniel Fonseca, Linda Dye, John Carillo,
                        Jose Lara, Alicia Rock, Lori Barker, Roger Wilson, Rick
13                      West, Kory Honea, Michael Ramsey, Pamela Chambers,
                        Pamela Richards, Patricia Parra, Jorje Lozano, Erin Sweet,
14                      Eric O'Berg, David Kennedy, Peter Meadowsong,
                        Kimberly Merrifield, Bruce Alpert, Amy King, Tamara
15                      Solano, Steven McNelis, William Patrick, Tamara
                        Mosbarger, James Reilley, David Gunn, William Lamb,
16                      Anne Osborn, Elisabeth Woodward, Martin McHugh,
                        Alfred Driscoll, Gary Wilson, Richard Thomas, Larry
17                      Levine, Windsor, Deputy Lang, and Mike Morgan.

18 She also names North State Public Safety Employee Retiree Medical Trust.  Plaintiff asserts that

19 the facts alleged in the amended complaint give rise to a claim for violation of her civil rights.

20 She also alleged various state law statutory and/or tort claims (i.e., negligence, breach of contract,

21 defamation, etc.).

22 / / /

23 / / /

24 ───────────────
          [1]      The court observes that, contrary to the requirement of Federal Rule of Civil
25 Procedure 8(a)(2), the amended complaint (which consists of 49 type-written pages) contains
   neither a short nor plain statement of plaintiff's claims.  This has resulted in the expenditure of
26 excessive court resources in screening the amended complaint.

According to plaintiff, this case involves a minor child, "K.T."  Plaintiff states:

> The child in this case is K.T.  His mother ('Dawn') was pregnant with him when she met my son and they decided to become a family, so when K.T. was born, in August '03, it was as my non-related grandson. The new family split up after a couple of years and dawn left K.T. with me frequently after that.  He began living with me in December '06 and I became his de facto parent.  In September 2007 Children's Services initiated a WIC 300 proceeding to terminate Dawn's parental rights and K.T. was listed as my foster child.  With his mother's blessing, I was adopting him.  Though we call each other 'Grandma/Grandson,' our relationship was that of parent/child, so I refer to K.T. as my child.

According to plaintiff, in the summer of 2007, it came to the attention of welfare officials that, although K.T. was living with her, Dawn was collecting welfare as if the child were living with her.  In September 2007 Dawn appeared at K.T.'s daycare intending to take him.  The daycare providers believed that Dawn was inebriated at the time and called the police.  Defendant Moore, a police officer and plaintiff's ex-husband, instructed the daycare providers to release K.T. to Dawn's custody.  Plaintiff states that, when she learned of this, she reported child endangerment to the police.  She further states that officer Lara "falsified this report as though it were a missing person report though he knew K.T. was not 'missing' but was with his mother and in danger."

On September 13, 2007, the police detained a child in a danger situation.  This child turned out to be K.T.  It was at this time that K.T. was placed with plaintiff as a foster child. This placement was accomplished by Patricia Parra who did so without any kind of home investigation "as a professional courtesy to Moore."  While a home investigation was completed in October 2007, plaintiff states that Parra did not make any of the mandatory monthly visits.

More specifically regarding Moore, plaintiff states that he abused her and told her he would "take my children, take my house, have me thrown in the loony bin, leave me penniless" if she reported the abuse.  According to plaintiff, Moore stated repeatedly that he could get away with anything he wanted because he was a police officer.  Plaintiff claims that "[o]n or about 1/2/08 Moore battered me and re-affirmed the above threats to dissuade me from

1   reporting it." When plaintiff finally sought assistance from the police, she was told by officers

2   Merrifield and McPhail that her "domestic problems are none of our business." The officers

3   refused to make a report and told plaintiff to "deal with it." Plaintiff states that this caused

4   Moore's abuse to intensify.

5          In an effort to escape Moore, plaintiff states that she either began having others

6   stay with her at her house or she and K.T. would stay with others. She states that she eventually

7   left the house until she was able to obtain a restraining order. Plaintiff retained attorney

8   Elisabeth Woodward for this purpose. According to plaintiff, Moore became aware that she was

9   attempting to obtain a restraining order and that Moore "arranged for a confidential informant to

10  burglarize and vandalize his truck to create suspicion on me that I was a violent and angry

11  person."

12         Plaintiff states that a hearing on her application for a restraining order was heard

13  on February 27, 2008, by Butte County Superior Court Commissioner David Gunn. She states

14  that a stipulation was reached whereby a "non-DV" order would issue so that Moore would keep

15  his gun and job. Plaintiff states that she only agreed to this stipulation under duress. According

16  to plaintiff, after the restraining order was issued, she was contacted by officer Rucker who

17  indicated that the department was going to conduct an internal affairs investigation. He refused

18  plaintiff's request that the investigation be referred to an outside agency.

19         Plaintiff next states that, in March 2008, Moore arranged to remove his belonging

20  from plaintiff's house. Plaintiff claims:

21             Based on information and belief, on the date I had to allow Moore
            to go to my house without a stand-by, Moore and an accomplice fabricated
22          a scene to create suspicion on me that I was a violent and angry person. . . .

23         Next, plaintiff claims that she appeared at a family law hearing on March 25,

24  2008, with Butte County Superior Court Judge William Patrick presiding. Plaintiff states that

25  her attorney committed various acts of malpractice during this hearing. Plaintiff told her attorney

26  that she didn't want any spousal support from Moore as part of a divorce settlement because she

4

1  feared that taking any money from Moore "would have increased my already extreme danger."

2  Plaintiff then left the courtroom.  Immediately thereafter the judge addressed the allegations of

3  domestic violence.  Plaintiff states that an "inappropriate non-CLETS temporary order" was

4  issued for three years, but that the court "again failed to address the issue of the safety and

5  custody of my child [K.T.]."

6         Returning to the police department investigation concerning plaintiff's allegations

7  against Moore, plaintiff next states that, after she refused to provide any statement to the internal

8  affairs investigator, she was referred to the Butte County District Attorney's Office who,

9  according to plaintiff, "began to harass me for a statement."  Eventually plaintiff went to the

10 Butte County District Attorney's Office in March 2008 and spoke with investigator Rick West.

11 In April 2008, plaintiff was informed by West that the Butte County District Attorney's Office

12 would not take any action on her complaint against Moore.  According to plaintiff, West

13 "excused" allegedly false statements made by Moore and ignored other evidence.  Plaintiff states

14 that she "tried to defend herself" by reminding West that there was a witness.  She adds:

15            . . . At this, he [West] threatened to conclude that I was the
            dominant aggressor.  This being ridiculous, I did not back down, so he
16          made fraudulent threats, telling me that K.T. would have to be put on the
            stand because he witnessed the violence and the opposing attorney would
17          'rip him to shreds and traumatize him on the stand.'

18 According to plaintiff, while the interview was tape recorded, the portion containing these threats

19 was destroyed.  Frustrated, plaintiff turned to the City Manager "to inform him of the

20 shenanigans. . . ."

21         Next, plaintiff claims that K.T. was detained on April 23, 2008, without warrant

22 or warning, as the result of a conspiracy among the Butte County District Attorney's Office, the

23 Chico Police Department, and the Children's Services Division of the Department of Health and

24 Human Services.  Plaintiff states that her calls to the Children's Services Division went

25 unanswered and she was not provided any information concerning K.T.  The next day plaintiff

26 discovered a note on her door from the Children's Services Division informing her that K.T. had

1   been removed from the home due to domestic violence he witnessed.  The note indicated that a

2   hearing had been scheduled for April 28, 2008.  Plaintiff later learned that the petition filed by

3   the Children's Services Division alleged that "there were no reasonable means to protect K.T.

4   from witnessing DV [domestic violence]. . . ."  Plaintiff claims that the petition contained false

5   statements and intentionally excluded key evidence.

6           At the April 23rd hearing, Butte County Superior Court Judge Tamara Mosbarger

7   was presiding.  Plaintiff claims that the judge would not allow her or members of her family

8   present any evidence or address the allegedly false statements in the petition.  Plaintiff states that

9   she later learned that Moore had been working with local officials "to get K.T. taken away. . . ."

10  Plaintiff also claims that the Children's Services Division was "covering their asses for not doing

11  the home investigation prior to listing K.T. as a foster child and for not doing the home visits."

12          According to plaintiff, she filed a "de facto [parent] request" and supporting

13  declaration in the Butte County Superior Court on May 2, 2008.  By this time, plaintiff had

14  retained new counsel – Martin McHugh – to represent her.  Plaintiff states that McHugh told her

15  not to worry because her case was "cut and dried."  Apparently paperwork had been misplaced by

16  the time of the original hearing date and the matter was re-scheduled for a date a month later to

17  allow McHugh to re-file papers.  Plaintiff states that McHugh never re-filed her petition and that

18  McHugh never showed up for the next hearing date scheduled for June 19, 2008.  Plaintiff claims

19  that she tried to speak but the judge would not allow her because McHugh was her attorney of

20  record.  The next hearing was scheduled for January 29, 2009.

21          Next, plaintiff asserts that an "unknown agency or agencies" spread the false

22  rumor that plaintiff was being investigated for child abuse and that her house and phones were

23  bugged.  Plaintiff admits that she was indeed being investigated for child abuse, though she states

24  that she never received any written notice of such investigation and was never interviewed by the

25  Children's Services Division.  Plaintiff states that, even so, the Children's Services Division

26  falsely indicated in a report to the Department of Justice that she had been interviewed for

6

"emotional abuse" of K.T.  When plaintiff asked for a copy of this report, the Children's Services Division denied her request.

Plaintiff then filed a grievance with Butte County Administration.  She states that this resulted in a new investigation.  The investigation concluded that plaintiff was, in fact, not committing emotional abuse of K.T. by, according to plaintiff, "convicting me of having made a 'false report' of DV [domestic violence], presumably in order that Moore be exonerated." Plaintiff states that the Chico Police Department's internal affairs investigation into her claim that Moore abused her was concluded with a "not sustained" finding due to lack of witnesses.

According to plaintiff, her "DV case" was next scheduled for hearing on July 22, 2009, before Butte County Superior Court Judge William Patrick.  The judge ordered the parties to mediation.  Ultimately, the case was dismissed.

Plaintiff next sets forth an extremely lengthy discussion of allegations related to her divorce from Moore.  She claims:

> So, having been shown that I am not allowed to make reports of people or property crimes or to make complaints or make record, and was prevented by law enforcement and judges from reporting victimization to any law enforcement or judge, and had and continued to be deprived of my civil right to attempt to protect my interests or defend against false accusations, and now faced going into the dissolution trial without even financial disclosure or discovery, I tried to open a door to escape the 'Blue Wall of Silence" by making a citizen's arrest for at least the restraining order violations and trespass as I had enough probable cause including a witness. . . .

Plaintiff states that she also complained to the Judicial Council of California concerning alleged judicial impropriety.

Next, plaintiff states that Moore attempted to "murder me using confidential informants" on March 13, 2009.  She states that she "was able to avoid this" and made a report to the Chico Police Department.

/ / /

/ / /

1    Plaintiff claims that another hearing in the divorce case was held on March 17,

2   2009, with Judge McNelis presiding.  She states that the judge "let it be known that he had

3   already decided to deny my motions and that I was not going to be allowed to speak."  Plaintiff

4   responded by hiring yet another attorney – Richard Thomas – on March 20, 2009.

5    Returning to her custody allegations relating to K.T., plaintiff next claims that she

6   arranged with K.T.'s temporary guardians to meet at a local Wal-Mart so that K.T. and plaintiff

7   could see each other.  This resulted in a restraining order being issued against plaintiff for

8   "threatening to disturb and disrupt K.T.'s peace."  Another court hearing was scheduled for

9   October 13, 2009.  Plaintiff claims:

10              I was accused of having been secretive with K.T., having tried to
            talk to K.T. about the DJ, and of hanging around K.T.'s school.  The
11              persons making these accusations . . . were not in court for cross-
            examination and there was of course no evidence of this. . . .

12

13   By December 2009, plaintiff learned that the LeFantos (with whom K.T. had been staying) did

14   not want K.T. and that the child had been "dumped back" into the foster system.  Plaintiff states

15   that she begged the Butte County Superior Court to intervene somehow.  This petition was

16   denied.  Plaintiff then asked the Court of Appeal to intervene and that the court declined to do so

17   stating that plaintiff was not aggrieved because she was "not a party to K.T.'s life."

18    Next, returning to facts relating to her divorce, plaintiff alleges that another trial

19   commenced on February 18, 2010, even though she still had not been provided with discovery or

20   required disclosures.  Plaintiff claims that the court made an ex parte finding that there had been

21   no domestic violence committed by Moore.  She also states that the ultimate dissolution was

22   unfair to her.

23   / / /

24   / / /

25   / / /

26   / / /

8

1  Plaintiff concludes her lengthy (and somewhat disjointed) series of factual

2  allegations by stating:

3  That's pretty much 'just the facts' in this case, which has proven
   only one thing: That, as my husband [Moore] warned and predicted, 'he
4  can do anything he wants and get away with it because he is a cop.'  And
   so can his 'friends.'

5

6

7  **II.  DISCUSSION**

8  The court finds that the amended complaint suffers from a number of fatal flaws,

9  discussed below.[2]

10  A.  **Allegations Against Municipal Defendants**

11  Municipalities and other local government units are among those "persons" to

12  whom § 1983 liability applies.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

13  Counties and municipal government officials are also "persons" for purposes of § 1983.  See id.

14  at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local

15  government unit, however, may not be held responsible for the acts of its employees or officials

16  under a respondeat superior theory of liability.  See Bd. of County Comm'rs v. Brown, 520 U.S.

17  397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not

18  of the actions of its employees or officers.  See id.  To assert municipal liability, therefore, the

19  plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

20  custom of the municipality.  See id.  A claim of municipal liability under § 1983 is sufficient to

21  withstand dismissal even if it is based on nothing more than bare allegations that an individual

22  defendant's conduct conformed to official policy, custom, or practice.  See Karim-Panahi v. Los

23  Angeles Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988).

24  _____

25  [2]  Because, for the reasons discussed herein, the court finds that plaintiff cannot state
    a cognizable federal claim, the court also finds that it should not exercise  jurisdiction over any
26  state law claims raised on the amended complaint.

1    The factual allegations set forth in the amended complaint relate instances of

2    impropriety by various government officials and employees.  Plaintiff does not allege any

3    specific facts attributing alleged constitutional violations to any official custom or policy of a

4    municipal defendant.[3]  All municipal defendants should be dismissed.

5    **B.    Allegations Against State Court Judges**

6    Judges are absolutely immune from damage actions for judicial acts taken within

7    the jurisdiction of their courts.  See Schucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988)

8    (per curiam).  Judges retain their immunity even when they are accused of acting maliciously or

9    corruptly, see Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam); Stump v. Sparkman, 435

10   U.S. 349, 356-57 (1978), and when they are accused of acting in error, see Meek v. County of

11   Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  This immunity also extends to the actions of court

12   personnel when they act as "an integral part of the judicial process."  See Mullis v. U.S.

13   Bankruptcy Court, 828 F.2d 1385, 1390 (9th Cir. 1987).

14   Plaintiff names a number of state court judges and complains of improprieties in

15   the context of court proceedings over which they presided.  Even though plaintiff appears to

16   allege malice, corruption, and/or error, the judicial defendants are entitled to absolute immunity

17   and should be dismissed.

18   **C.    Allegations Against Supervisory Personnel**

19   Supervisory personnel are generally not liable under § 1983 for the actions of their

20   employees.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no

21   respondeat superior liability under § 1983).  A supervisor is only liable for the constitutional

22   violations of subordinates if the supervisor participated in or directed the violations.  See id.  The

23   Supreme Court has rejected the notion that a supervisory defendant can be liable based on

24   knowledge and acquiescence in a subordinate's unconstitutional conduct because government

25

26   [3]    Plaintiff's "Blue Wall" allegations relate to improper actions by individual police officers in seeking to protect defendant Moore.

1    officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct

2    and not the conduct of others.  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  When a

3    defendant holds a supervisory position, the causal link between such defendant and the claimed

4    constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

5    (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

6    allegations concerning the involvement of supervisory personnel in civil rights violations are not

7    sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  "[A] plaintiff must

8    plead that each Government-official defendant, through the official's own individual actions, has

9    violated the constitution."  Iqbal, 129 S.Ct. at 1948.

10            To the extent plaintiff names defendants who hold supervisory roles, and to the

11   extent plaintiff alleges such defendants are liable solely based on the actions of subordinates,

12   plaintiff cannot state a claim.

13        D.    **Allegations Against the State of California and/or State Agencies**

14            The Eleventh Amendment prohibits federal courts from hearing suits brought

15   against a state both by its own citizens, as well as by citizens of other states.  See Brooks v.

16   Sulphur Springs Valley Elec. Coop., 951 F.2d 1050, 1053 (9th Cir. 1991).  This prohibition

17   extends to suits against states themselves, and to suits against state agencies.  See Lucas v. Dep't

18   of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); Taylor v. List, 880 F.2d 1040, 1045 (9th

19   Cir. 1989).

20            Plaintiff names as defendants the State of California as a defendant as well as the

21   California Department of Justice.  These defendants are immune from suit and should be

22   dismissed.

23   / / /

24   / / /

25   / / /

26   / / /

E.      **Allegations Relating to Concluded State Court Cases**

Under the Rooker-Feldman abstention doctrine, federal courts lack jurisdiction to hear matters already decided in state court.  See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  The doctrine applies in cases "brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).  An exception, inapplicable here, would be where Congress expressly grants federal courts jurisdiction to review state court judgment (such as habeas corpus, for example).

Substantively, plaintiff complains of improprieties surrounding her divorce and custody proceedings involving K.T.  Plaintiff states that both of these matters were decided against her in state court.  In general, plaintiff cannot come to this court complaining about state court decisions rendered against her before commencing suit, which is exactly what she is attempting to do here.  The court should abstain from hearing plaintiff's substantive claims and this action should be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

12

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that the first amended complaint be dismissed without leave to amend and that this action be dismissed in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  July 21, 2011

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE